STATE OF NORTH CAROLINA
v.
ANDREW MICHAEL TOLER.
No. COA07-337
Court of Appeals of North Carolina.
Filed March 4, 2008
This case not for publication
Attorney General Roy A. Cooper, III, by Assistant Attorney General Derrick C. Mertz, for the State.
Stubbs, Cole, Breedlove, Prentis & Biggs, PLLC, by C. Scott Holmes, for defendant-appellant.
STEELMAN, Judge.
Where the indictments were sufficient to put defendant on notice of the crimes being charged, the trial court properly denied defendant's motion to dismiss. Where defendant's argument on appeal is different than his objection at trial, the argument is not preserved for appellate review. Where defendant has shown no discovery violations, the court did not err in denying his motion to dismiss. The admission of defendant's driving record for the limited purpose of showing his driving status on the day of his arrest was not error. The defendant was properly sentenced as a Class C felon for the charge of conspiracy to manufacture methamphetamine.

I. Factual and Procedural Background
On 15 January 2006, Johnston County Deputy Sheriff Ronald Deese (Deese) was on patrol on Beulahtown Road. Deese observed Andrew Toler (defendant) driving a truck in the opposite direction. Deese knew defendant's license was revoked, so he turned his vehicle around and activated his blue lights. Deese observed defendant throw something out of the window. He stopped defendant and arrested him for driving while license revoked. A search of defendant yielded a glass pipe and a clear bag which contained . 4 grams of methamphetamine.
A local resident, Stewart Phillips (Phillips), contacted Deese and informed him that Phillips had found two bags containing what he believed to be drugs and a digital scale in the area where defendant threw something out of the truck. Laboratory tests revealed that one bag contained 32.4 grams of dimethyl sulfone, a cutting agent used for methamphetamine, and one bag contained .8 grams methamphetamine. Defendant confessed to officers that he had been cooking methamphetamine that day with Chris Hodge, the owner of the truck. Defendant acknowledged ownership of the scales, and admitted to collecting pseudoephedrine pills and stealing two anhydrous ammonia tanks to be used to produce methamphetamine.
Defendant led police to a shed behind his trailer where he operated two methamphetamine labs. A search of defendant's trailer revealed several pseudoephedrine pills. The State Bureau of Investigation ("SBI") searched the shed and found a cooler and a five gallon bucket containing methamphetamine in its base liquid form. The weight of the liquid in the cooler and bucket was determined to be approximately 1290 grams.
On 24 August 2006, a jury found defendant guilty of Maintaining a Vehicle for Keeping of Controlled Substances, Felony Conspiracy to Manufacture Methamphetamine, Maintaining a Dwelling for Keeping of Controlled Substances, and Trafficking in Methamphetamine by Manufacture of 28 grams or more, but less than 200 grams. The jury found defendant not guilty of Trafficking in Methamphetamine by Possession. Defendant was sentenced to 121 to 155 months imprisonment on the conspiracy charge, 7 to 9 months imprisonment on the two maintaining charges, and 70 to 84 months imprisonment on the trafficking charge. The sentences were to run concurrently. From these judgments, defendant appeals.

II. Sufficiency of Indictments
In his first argument, defendant contends that the trial court erred in failing to dismiss the charges of conspiracy to manufacture a controlled substance and trafficking in methamphetamine by manufacture when the indictments were fatally defective. We disagree.
For an indictment to be valid, it must
(1) identify the offense with which the accused is sought to be charged; (2) protect the accused from being twice put in jeopardy for the same offense; (3) enable the accused to prepare for trial; and (4) enable the court, on conviction or plea of nolo contendere or guilty, to pronounce sentence.
State v. Goforth, 65 N.C. App. 302, 305, 309 S.E.2d 488, 491 (1983) (citation omitted). If the body of the indictment is sufficient to properly charge defendant with the offense, reference to the incorrect statute does not constitute a fatal defect. State v. Mueller, ___ N.C. App. ___, ___, 647 S.E.2d 440, 455 (2007) (citations omitted). "Allegations beyond the essential elements of the crime sought to be charged are irrelevant and may be treated as surplusage." State v. Taylor, 280 N.C. 273, 276, 185 S.E.2d 677, 680 (1972).

A. Conspiracy to Manufacture Methamphetamine
Defendant contends that the indictment for conspiracy to manufacture a controlled substance was fatally defective. Criminal conspiracy requires the State to prove an agreement of two or more persons to do an unlawful act or to do a lawful act by unlawful means. State v. Diaz, 155 N.C. App. 307, 319, 575 S.E.2d 523, 531 (2002) (citation omitted). "N.C. Gen. Stats. § 90-95(a) provides that `it is unlawful for any person: (1) To manufacture . . . a controlled substance.'" State v. Childers, 41 N.C. App. 729, 731, 255 S.E.2d 654, 656 (1979). The quantity of the drugs seized is not an element of manufacturing a controlled substance.State v. Hyatt, 98 N.C. App. 214, 216, 390 S.E.2d 355, 357 (1990).
The indictment for conspiracy to manufacture methamphetamine reads as follows:
II. THE JURORS FOR THE STATE UPON THEIR OATH FURTHER PRESENT that on or about January 15, 2006, in the county of Johnston, the Defendant named above unlawfully, willfully, and feloniously did agree, plan, combine, conspire, and confederate with Chris Hodge to manufacture methamphetamine, as defined by N.C.G.S. 90-87(6)(15), by production, preparation, compounding, conversion, or processing and by packaging and repackaging. Methamphetamine is a controlled substance which is included in Schedule II of the North Carolina Controlled Substances Act. This act is in violation of N.C.G.S. § 90-95(h)(3b)(a).
The statutory reference for this offense contained in the caption of the indictment was N.C. Gen. Stat. § 90-95(a)(1), which governs the manufacture of a controlled substance.
Defendant first contends that the indictment is fatally defective due to its reference to N.C.G.S. 90-87(6)(15). There is no such statute. N.C. Gen. Stat. § 90-87(6) defines "counterfeit controlled substances" and N.C. Gen. Stat. § 90-87(15) defines "manufacture." The reference to a non-existent statute is extraneous and unrelated to the offense of conspiracy to manufacture methamphetamine. Defendant cannot in good faith claim confusion about the nature of the charge against him, especially when he admitted to manufacturing methamphetamine, not counterfeit controlled substances.
We hold the erroneous inclusion of this statutory reference in the body of the indictment was surplusage and did not substantially alter the meaning of the offense charged, such that defendant did not have notice of the crime with which he was charged. See State v. Thrift, 78 N.C. App. 199, 202, 336 S.E.2d 861, 862 (1985). This argument is without merit.
Defendant further contends that the indictment is flawed because the body of the indictment references N.C. Gen. Stat. § 90-95(h)(3b)(a), the statute governing trafficking in methamphetamine, yet the indictment fails to allege a quantity of methamphetamine. Although weight is an essential element of a trafficking charge, quantity is not an element of a conspiracy to manufacture methamphetamine charge, of which defendant was found guilty. The reference to N.C. Gen. Stat. § 90-95(h)(3b)(a) was surplusage, and defendant's argument is without merit.

B. Trafficking in Methamphetamine by Manufacture
Defendant also contends that the indictment for trafficking in methamphetamine by manufacture was fatally defective. The offense is defined in N.C. Gen. Stat. § 90-95(3b):
Any person who sells, manufactures, delivers, transports, or possesses 28 grams or more of methamphetamine or amphetamine shall be guilty of a felony which felony shall be known as "trafficking in methamphetamine or amphetamine". . .
N.C. Gen. Stat. § 90-95(3b) (2007) (emphasis added). Subsections (a)-(c) of the statute specify the punishment levels related to the amount which a defendant is found to be trafficking. If the amount defendant is trafficking "[i]s 28 grams or more, but less than 200 grams" the offense is a Class F felony. N.C. Gen. Stat. § 90-95(3b)(a).
The indictment returned against defendant for trafficking in methamphetamine by manufacture reads as follows:
III. THE JURORS FOR THE STATE UPON THEIR OATH FURTHER PRESENT that on or about January 15, 2006, in the county of Johnston, the Defendant named above unlawfully, willfully, and feloniously did manufacture, as defined by N.C.G.S. § 90-87(6)(15), twenty-eight (28) grams or more but less than two hundred (200) grams of methamphetamine, by production, preparation, compounding, conversion, or processing and by packaging and repackaging. Methamphetamine is a controlled substance which is included in Schedule II of the NorthCarolina Controlled Substances Act. This act was in violation of North Carolina General Statutes Section 90-95(h)(3b)(a).
The statutory reference for the offense contained in the caption of the indictment was N.C. Gen. Stat. § 90-95(h)(3b)(a).
Defendant argues that the indictment for the trafficking by manufacture charge is fatally defective due to its reference to N.C.G.S. 90-87(6)(15). As discussed above, we hold that this argument is without merit.

III. Variance Between Evidence and Indictments
In his second argument, defendant contends that the trial court erred in denying his motion to dismiss because "there was a fatal variance between the allegations of [the] indictment and the evidence at trial." We disagree.
Defendant made a pre-trial motion to suppress evidence of and testimony relating to the liquid methamphetamine found in the shed on the grounds that "the liquid prior to the smoking process or shooting process is merely a combination of precursor ingredients from which meth is made." At trial, defendant moved to dismiss the charge of trafficking in methamphetamine on the grounds that, since the State presented evidence of 1290 grams of methamphetamine, that amount was not "less than 200 grams" and the indictment was invalid because it charged him with a lesser trafficking offense. On appeal, defendant argues that the State failed to present evidence at trial of at least 28 grams of methamphetamine because the liquid base form of methamphetamine does not qualify as a controlled substance within the meaning of N.C. Gen. Stat. § 90-90 (2005). Defendant contends that N.C. Gen. Stat. § 90-90(3) includes only usable methamphetamine in its crystal form, and the liquid methamphetamine cannot be considered in determining whether there was sufficient methamphetamine to support the trafficking charge.
Although defendant moved to suppress the evidence of the liquid methamphetamine, his objection at trial focused on the alleged error in the indictment. Defendant failed to renew his objection at trial regarding his contention that liquid methamphetamine is not included under the statute, and has thus not preserved this matter for our review. See State v. Oglesby, 361 N.C. 550, 554, 648 S.E.2d 819, 821 (2007). This argument is dismissed.
Assuming arguendo defendant has preserved this matter for our review, we note that "[m]anufacturing is broadly defined by N.C. Gen. Stat. § 90-87 (15)," State v. Alderson, 173 N.C. App. 344, 348, 618 S.E.2d 844, 847 (2005), and includes "the production, preparation, propagation, compounding, conversion, or processing of a controlled substance by any means, whether . . . independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis . . ." Id. (citing N.C. Gen. Stat. § 90-87 (15) (emphasis added)).
The record contains ample evidence that defendant was preparing, converting, and processing the liquid methamphetamine. Agent Sheila Bayler, a forensic chemist with the SBI, testified that "[t]he final step of the production is to convert the methamphetamine into a powder form" and that "within the outbuilding we found a 16-ounce bottle of . . . hydrogen peroxide. Hydrogen peroxide is used . . . to produce iodine crystals, which is used in a different production of methamphetamine." Additionally, three feet of tubing with white residue on the inside, a large compressed gas cylinder, a gallon container of camp fuel, a one quart bottle of denatured alcohol, a special type of clear sealant, tubing, 5 torn open lithium batteries, pseudoephedrine, lithium, and anhydrous ammonia were located on the premises. This evidence shows that defendant was engaged in the chemical synthesis and production of methamphetamine, and thus the manufacture of methamphetamine. This argument is without merit.
Defendant next contends that the evidence at trial did not support a conviction of a violation N.C. Gen. Stat. § 90-95(h)(3b)(a), proscribing the manufacture of 28-200 grams of methamphetamine, where the evidence at trial showed that defendant manufactured 1290 grams of methamphetamine.
N.C. Gen. Stat. § 90-95(h)(3b) provides that "[a]ny person who . . . manufactures . . . 28 grams or more of methamphetamine or amphetamine shall be guilty of a felony which felony shall be known as `trafficking in methamphetamine or amphetamine' . . ." Id. The statute then goes on to prescribe punishments based on the amount by which the controlled substance exceeds 28 grams. If the defendant manufactured more than 28 grams of methamphetamine, then he is guilty of a trafficking offense, with the weight being relevant only to the level of punishment. See State v. Wilson, 155 N.C. App. 89, 100, 574 S.E.2d 93, 101 (2002). Defendant appears to complain that he was undercharged by the State with a Class F felony rather than a Class C felony. This argument is without merit.

IV. Motion to Dismiss Maintaining a Vehicle for Keeping Controlled Substances
In his third argument, defendant contends that the trial court erred in denying his motion to dismiss the charge of maintaining a vehicle for keeping controlled substances due to the insufficiency of the evidence. We disagree.
We do not reach the merits of this argument because defendant failed to preserve this issue for our review. At trial, defendant's motion to dismiss was based upon his contention that he "was driving the vehicle on that particular day. . . the vehicle was registered to someone else. . . [and] in someone else's name. The officer said he was not aware of any information whereby [defendant] maintained that vehicle, simply he was driving it that day." Defendant's argument on appeal is that there was evidence only of a single instance of use, and that the State failed to present substantial evidence that defendant had maintained the vehicle for a substantial period of time.
We addressed the identical issue in State v. Euceda-Valle, ___ N.C. App. ___, 641 S.E.2d 858 (2007), disc. review denied, 361 N.C. 698, 652 S.E.2d 923 (2007). In that case, we held that:
[D]efendant's motion to dismiss at trial was based upon his contention that he did not have an "ownership interest [in the vehicle] short of possession,". . . However, on appeal, defendant argues the trial court erred by denying his motion to dismiss because the State failed to prove that he possessed the [vehicle] with the [controlled substance] in the trunk for a substantial period of time. Accordingly, as defendant presents a different theory to support his motion to dismiss than that he presented at trial, this assignment of error is waived.
Id. at ___, 641 S.E.2d at 862 (citation omitted). We are bound by prior decisions of this Court, In re Civil Penalty, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989), and this argument is dismissed.

V. Alleged Discovery Violations
In his fourth argument, defendant contends that the trial court erred in admitting evidence because it was not provided to defendant in discovery. Defendant contends that the trial court erred in denying his motion to dismiss when the State failed to comply with discovery statutes. We disagree.
N.C. Gen. Stat. § 15A-903 provides that, upon a motion from defendant, the court must order the State to:
Make available to the defendant the complete files of all law enforcement and prosecutorial agencies involved in the investigation of the crimes committed or the prosecution of the defendant. The term "file" includes the defendant's statements, the codefendants' statements, witness statements, investigating officers' notes, results of tests and examinations, or any other matter or evidence obtained during the investigation of the offenses alleged to have been committed by the defendant. . . . Oral statements shall be in written or recorded form . . . . The defendant shall have the right to inspect and copy or photograph any materials contained therein and, under appropriate safeguards, to inspect, examine, and test any physical evidence or sample contained therein.
N.C. Gen. Stat. § 15A-903(a)(1) (2007). Although defendant frames his argument as a violation of his constitutional rights, he failed to assert any constitutional violation at trial, and is thus precluded from raising a constitutional argument on appeal. See State v. Sharpe, 344 N.C. 190, 194, 473 S.E.2d 3, 5 (1996).
Where the State fails to comply with discovery, the court, in its discretion, may impose a variety of sanctions, including granting a continuance or a recess. State v. Weeks, 322 N.C. 152, 171, 367 S.E.2d 895, 906 (1988) (citing N.C.G.S. § 15A-910 (1983)). "The choice of which sanction to apply, if any, rests in the sound discretion of the trial court and is not reviewable absent a showing of an abuse of that discretion." State v. Gladden, 315 N.C. 398, 412, 340 S.E.2d 673, 682 (1986) (citations omitted).

A. Liquid Methamphetamine Samples
Defendant first argues that the liquid methamphetamine samples were destroyed before he had an opportunity to test and measure them. We disagree.
"[O]ur Courts have recognized a criminal defendant's due process right in limited circumstances to inspect the crime scene, and to have an independent chemical analysis performed upon seized substances." State v. Cunningham, 108 N.C. App. 185, 195, 423 S.E.2d 802, 808 (1992) (citations omitted).
The record in the instant case indicates that, due to the dangers associated with chemical exposure to methamphetamine, the bulk of the substances found at the crime scene were professionally destroyed pursuant to SBI procedure. Samples of liquid methamphetamine were taken from the crime scene to the SBI lab for testing. On 21 August 2006, defendant moved to suppress evidence of the liquid methamphetamine on the grounds that the evidence was destroyed before he had an opportunity to test, measure, and weigh the substance. At the pre-trial hearing, defendant was informed that the samples taken to the SBI lab had in fact not been destroyed, and were available for testing. Defendant declined the opportunity to test the samples, and withdrew his motion for continuance.
We hold that since defendant had an opportunity to have the samples tested prior to trial, there was no discovery violation. This argument is without merit.

B. Phillips' Testimony
Defendant next argues that the trial court erred in admitting Phillips' testimony where his written statement was not provided to defendant by the State.
Deese took a written statement from Phillips regarding his discovery of what he believed to be drugs and a set of scales. The written statement was not in Deese's file, and Deese did not know what happened to it. However, the trial court found that the substance of Phillips' testimony was included in Deese's report, which was provided to defendant, and that this constituted sufficient notice of Phillips' testimony.
Defendant was aware of the substance of Phillips' statement, and he did not suffer prejudice or unfair surprise as a result of the admission of Phillips' testimony. See State v. Payne, 327 N.C. 194, 202, 394 S.E.2d 158, 162 (1990) ("[T]he purpose of discovery under our statutes is to protect the defendant from unfair surprise by the introduction of evidence he cannot anticipate."). Further, defendant has not shown that the trial court abused its discretion in admitting Phillips' testimony. We hold that there was no discovery violation, and that this argument is without merit.

C. Crime Scene Photographs
Defendant next argues that the trial court erred in admitting photographs of the crime scene which were not provided to defendant. Defendant argues that since the State did not make the photographs available to defendant before trial, the trial court erred in admitting them as evidence. We disagree.
During trial, defendant moved to dismiss the charges based on this alleged discovery violation. The court denied the motion and, although it did not find that a discovery violation had occurred, granted the defense a recess to examine the photographs. The court specifically instructed defense counsel not to rush and to take all the time he needed to review the photographs.
The granting of a recess is one of the enumerated remedies a trial court is statutorily authorized to employ under N.C. Gen. Stat. § 15A-910. Defendant has made no showing of prejudicial error, and we hold that the trial court did not abuse its discretion in admitting the photographs into evidence. This argument is without merit.

D. Expert Opinion
Finally, defendant argues that the trial court erred in admitting the expert opinion of SBI forensic drug chemist Sheila Bayler (Bayler) where the State failed to provide defendant with Bayler's handwritten case notes, which allegedly contained a mathematical formula Bayler used to calculate the weight of the methamphetamine.
The trial court denied defendant's motion to dismiss the charges on the basis that defendant failed to make a motion for discovery. Although defendant notes that he filed a pro se discovery motion, the record reveals that at the time defendant filed the motion, he was represented by counsel. "Having elected for representation by appointed defense counsel, defendant cannot also file motions on his own behalf or attempt to represent himself." State v. Grooms, 353 N.C. 50, 61, 540 S.E.2d 713, 721 (2000). Defendant did not have a right to file a pro se motion, and the trial court was not required to consider it.
Defendant did not object to Bayler's testimony during trial. During cross-examination, defense counsel inquired about the mathematical formula Bayler used in calculating the weight of the methamphetamine, and did not object when she again testified about the formula upon redirect examination.
Further, the record reveals that defendant received Bayler's lab report, and defense counsel discussed the weight of the methamphetamine with the prosecutor prior to trial. Defendant has made no showing that the information Bayler provided at trial differed from that contained in the lab report. The prosecutor stated that he gave a copy to defendant of everything he received from Bayler, and did not provide defendant with a copy of her notes because he did not have them and was not aware of their existence.
The State complied with N.C. Gen. Stat. § 15A-903 when it provided the lab report to defense counsel. The prosecutor's failure to provide defendant with working notes which the prosecutor did not know existed and which have not been shown to contain information different from that in the lab report did not prejudice defendant or constitute a discovery violation. This argument is without merit.

VI. Admission of Defendant's Driving Record
In his fifth argument, defendant contends that the trial court erred in admitting a copy of his driving record into evidence. We disagree.
"[A]lthough Rule 609 may permit certain evidence of a defendant's prior conviction to be admitted if the defendant testifies, it is error to admit evidence of the defendant's prior conviction when the defendant does not testify[.]"State v. Badgett, 361 N.C. 234, 247, 644 S.E.2d 206, 214 (2007) (citations omitted). However, if one party introduces evidence as to a fact or circumstance, the other party is allowed to introduce evidence to rebut or explain such, "even though such latter evidence would be incompetent or irrelevant had it been offered initially." State v. Albert, 303 N.C. 173, 177, 277 S.E.2d 439, 441 (1981) (citations omitted). In the instant case, defendant did not testify. However, during his cross-examination of Deputy Deese, defendant's attorney asked him why he stopped defendant, and challenged Deese's knowledge of defendant's driver's license status on the date of the stop. Thereafter, the State offered defendant's driving record into evidence "for the limited purpose of showing the status of the license." Defendant opened the door as to the status of his driver's license, and the driving record was properly admitted for the limited purpose of showing defendant's license status on the date in question, not to show his propensity to commit the crime charged. See State v. Goodman, 149 N.C. App. 57, 70, 560 S.E.2d 196, 204 (2002), rev'd on other grounds, 357 N.C. 43, 577 S.E.2d 619 (2003).
The trial court did not err in admitting defendant's driving record for this limited purpose. Even assuming arguendo that the trial court did err, the burden is on the defendant to show that the error was prejudicial. See N.C. Gen. Stat. § 15A-1443(a) (2007). Defendant asserts that the admission of his driving record "could have prejudiced the jury against the defendant."
Defendant cannot meet his burden of showing prejudice. The driving record dealt with driving offenses, which were totally unrelated to the drug charges being tried before the jury. Defendant cannot establish that a different result would have occurred absent any error.

VII. Classification of Conspiracy Offense
In his sixth argument, defendant contends that the trial court erred in classifying the offense of conspiracy to manufacture methamphetamine as a Class C Felony. We disagree.
Pursuant to N.C. Gen. Stat. § 90-95(b)(1a), the manufacturing of methamphetamine is a Class C Felony. N.C. Gen. Stat. § 90-98 (2007) provides that:
[A]ny person who attempts or conspires to commit any offense defined in this Article is guilty of an offense that is the same class as the offense which was the object of the attempt or conspiracy and is punishable as specified for that class of offense . . .
Defendant was correctly sentenced for a Class C felony on the conspiracy charge.
NO ERROR.
Judges WYNN and HUNTER concur.
Report per Rule 30(e).