STATE OF NORTH CAROLINA v. CESARIO ZAMORA-RAMOS

No. COA07-738

(Filed 6 May 2008)

### 1. Criminal Law— discovery—statements of informant—reports sufficient

The trial court did not err in a cocaine trafficking prosecution by admitting the testimony of an informant where defendant contended that conversations between the informant and a detective were not recorded in writing in sufficient detail to comply with N.C.G.S. § 15A-903(a)(1). The State provided defendant with all reports in its file and with notice of the substance of the informant's statements, and defendant did not suffer prejudice or unfair surprise.

### 2. Drugs— trafficking by transportation—defendant in telephone contact—not constructively present

The trial court erred by denying defendant's motion to dismiss a charge of trafficking in cocaine by transportation where the State did not produce evidence that defendant himself transported the cocaine or was present or constructively present at the scene of the crime. Although the evidence shows that defendant maintained telephone contact with an accomplice during the crime, it does not show that he was present or nearby.

Appeal by defendant from judgments entered 28 March 2007 by Judge J.B. Allen, Jr., in Wake County Superior Court. Heard in the Court of Appeals 9 January 2008.

*Attorney General Roy Cooper, by Assistant Attorney General LaShawn L. Strange, for the State.*

*Kimberly P. Hoppin for defendant appellant.*

McCULLOUGH, Judge.

Cesario Zamora-Ramos ("defendant") was tried before a jury at the 26 March 2007 Session of Wake County Superior Court after being charged with one count of Level I and one count of Level III trafficking in cocaine by possession, one Level I and one Level III count of trafficking in cocaine by sale and delivery, one count of Level III trafficking in cocaine by transportation, and one count of conspiracy to traffic in cocaine by sale and delivery.

STATE v. ZAMORA-RAMOS

[190 N.C. App. 420 (2008)]

The relevant evidence tended to show the following: In December of 2005, Miguel Flores Figuero ("Figuero") began working as an informant for the Raleigh Police Department ("the Department"). Figuero provided Detective A. H. Pennica ("Detective Pennica") with the names of local cocaine dealers that he knew. Figuero knew defendant to be a cocaine dealer by the name of "Ramos" or "Angel."

Both Detective Pennica and Figuero testified at trial that under the supervision of Detective Pennica, Figuero engaged in a series of controlled buys with defendant. During each of these controlled buys, the Department provided Figuero with money to use to purchase the narcotics and set up a team of detectives to follow Figuero and conduct surveillance during the buy. The Department searched Figuero before and after each buy, confiscated the cocaine that Figuero purchased from defendant, and stored that cocaine as evidence in the Department's evidence locker.

The first of these controlled buys occurred on 23 June 2006. On that day, Figuero met defendant at a Wendy's located on Wake Forest Road and New Hope Church Road and purchased 15.4 grams of cocaine for $360.

Subsequent to the buy at Wendy's, Figuero was instructed to purchase a larger amount of cocaine from defendant and to discuss whether Figuero could purchase a half kilo of cocaine. On 14 July 2006, under the watch of a surveillance team, defendant and Figuero met at an Exxon station on Gorman Street at approximately 10:05 p.m. When Figuero arrived at the gas station, defendant was there with an ounce of cocaine.[1] That ounce of cocaine was purchased "on the front," and Figuero was expected to pay defendant $650 for that cocaine at a later date. Defendant told Figuero that it would cost $10,000 to $11,000 to purchase a half kilo of cocaine.

Subsequently, by telephone, Figuero and defendant made arrangements for Figuero to buy a half kilo of cocaine on 19 July 2006. Sometime between 14 July 2006 and 19 July 2006, defendant called Armando Oregon ("Oregon") and directed him to pick up a half kilo of cocaine from a park in Cary and to watch over it for defendant for a few days. When Oregon arrived at the park, he found defendant waiting for him in a parked grey car. Defendant gave Oregon a half kilo of cocaine packed in nylon wrapping.

---

1. The Department later determined that the actual total weight of cocaine was 29.0 grams.

At approximately 7:00 p.m. on 19 July 2006, Figuero met defendant at the parking lot of Denny's Restaurant on Wake Forest Road. Because of the large quantity of cocaine involved, Detective Pennica videotaped the exchange using an eight-millimeter videotape. The parking lot was well lit, and Detective Pennica observed defendant arrive alone in a silver Toyota Corolla.

Defendant instructed Figuero to wait in the Denny's parking lot for the cocaine to be delivered by a blue Honda. Defendant left the parking lot and headed toward his house in Johnston County. The department continued to follow defendant's vehicle by helicopter. At 10:30 p.m., Figuero called defendant to find out what was taking so long. Then, according to defendant's cell phone records, at 10:39 p.m, defendant called Oregon's cell phone. Between 10:41 p.m. and 11:47 p.m. on 19 July 2006, Oregon and defendant engaged in multiple telephone conversations.

At around 11:45 p.m. that night, a blue Honda arrived and pulled beside Figuero's vehicle. Oregon got out of the passenger side of the Honda and placed a Gain Laundry detergent box filled with a half kilo of cocaine into Figuero's trunk.[2] Figuero payed Oregon the $650 that he owed defendant from the 14 July 2006 buy. Immediately after this exchange, Figuero and the blue Honda left the parking lot.

On 24 July 2006, Figuero met defendant to pay him $11,000 for the half kilo of cocaine. The Department tape-recorded Figuero and defendant's conversation. As soon as the conversation was complete, the Department detained defendant. The Department also arrested Oregon.

Defendant was found guilty of one count of Level I trafficking in cocaine by sale and delivery, one count of Level III trafficking in cocaine by transportation, and one count of Level III trafficking in cocaine by sale and delivery. The trial court sentenced defendant to consecutive terms of imprisonment of 35 months to 42 months, 175 months to 219 months, and 175 to 219 months, respectively. Defendant was also found guilty of one count of Level I trafficking in cocaine by possession and one count of conspiracy to traffic in cocaine by sale and delivery, but the trial court continued judgment with respect to those counts.

On appeal, defendant contends that the trial court erred by: (1) allowing Miguel Figuero to testify at trial in violation of N.C. Gen.

2. The Department later determined that the actual total weight of the cocaine was 501.0 grams.

Stat. § 15A-903 (2007), and (2) denying defendant's motion to dismiss the Level III charge of trafficking in cocaine by transportation.

## I. Discovery

[1] First, defendant contends that the trial court erred by admitting Figuero's testimony in violation of N.C. Gen. Stat. § 15A-903. Defendant contends that Figuero should not have been allowed to testify at trial because the State did not provide defendant with detailed written accounts of each of the statements made by Figuero to Detective Pennica during the debriefing sessions that took place after each drug buy. Defendant does not contend that the State failed to provide him with all reports contained in its file or that those reports did not contain summaries of what Figuero told Detective Pennica; rather, defendant contends that the conversations between Figuero and Detective Pennica were not recorded in writing with sufficient detail to comply with § 15A-903. We disagree.

N.C. Gen. Stat. § 15A-903 provides:

(a) Upon motion of the defendant, the court must order the State to:

(1) Make available to the defendant the complete files of all law enforcement and prosecutorial agencies involved in the investigation of the crimes committed or the prosecution of the defendant. The term "file" includes the defendant's statements, the codefendants' statements, witness statements, investigating officers' notes, results of tests and examinations, or any other matter or evidence obtained during the investigation of the offenses alleged to have been committed by the defendant.

"[T]he purpose of discovery under our statutes is to protect the defendant from unfair surprise by the introduction of evidence he cannot anticipate." *State v. Payne*, 327 N.C. 194, 202, 394 S.E.2d 158, 162 (1990), *cert. denied*, 498 U.S. 1092, 112 L. Ed. 2d 1062 (1991). Defendant cites our decision in *State v. Shannon*, 182 N.C. App. 350, 357-64, 642 S.E.2d 516, 522-26 (2007), in support of his contention that, pursuant to N.C. Gen. Stat. § 15A-903(a)(1) and N.C. Gen. Stat. § 15A-501(6), law enforcement has an affirmative duty to take detailed notes of every conversation that it has with a witness. First, the facts of *Shannon* are distinguishable from the case *sub judice*. In *Shannon*, the defendant sought notes of pretrial conversations that the prosecution had with a witness. The substance of those conver-

sations was not reduced to writing at all. Here, the substance of Figuero's statements to law enforcement was reduced to writing and was provided to defendant. Furthermore, to the extent that this Court held in *Shannon* that a prosecutor has an affirmative duty to reduce the substance of witness statements to writing under N.C. Gen. Stat. § 15A-903(a)(1), the General Assembly has expressly rejected that holding. By amendment, the statute now provides that a prosecutor does not have an affirmative duty to reduce to writing the substance of an oral statement made by a witness outside of the presence of law enforcement and investigators unless that statement is significantly different from prior statements made by that witness. N.C. Gen. Stat. § 15A-903(a)(1). This amendment seems to be consistent with the overall goal of our discovery statutes, preventing unfair surprise at trial. *Payne*, 327 N.C. at 202, 394 S.E.2d at 162.

Here, the State provided defendant with all reports contained in its file, which included reports from the dates of each offense, notations of Detective Pennica's meetings with Figuero after each buy as well as a summary of what Figuero told Detective Pennica during each meeting. Defendant was provided with notice of the substance of Figuero's statements, and he did not suffer prejudice or unfair surprise as a result of the admission of Figuero's testimony. *See State v. Murillo*, 349 N.C. 573, 584-85, 509 S.E.2d 752, 758-59, *cert. denied*, 528 U.S. 838, 145 L. Ed. 2d 87 (1998) (distinguishing substance from form of discovery and reasoning that for purposes of our discovery statutes, a defendant must simply be provided with the substance or essence of a witness's oral statement); *see also State v. Toler*, 189 N.C. App. 212, 657 S.E.2d 446 (2008) (unpublished) (holding that where a defendant has notice of the substance of a witness statement made to law enforcement, the trial court has discretion to admit testimony under N.C. Gen. Stat. § 15A-903(a)(1)). Accordingly, we hold that this argument is without merit.

II. Motion to Dismiss Charge of Trafficking by Transportation

[2] Next, defendant contends that the trial court erred in denying his motion to dismiss the Level III charge of trafficking in cocaine by transportation because the State failed to produce evidence that defendant himself transported the half kilo of cocaine, or in the alternative, that defendant was present or constructively present at the scene of the crime when Oregon transported the cocaine. We agree, and reverse with respect to this charge.

In ruling on a motion to dismiss, the trial judge must consider the evidence in the light most favorable to the State, allowing every reasonable inference to be drawn therefrom. *State v. Olson,* 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992). The Court must find that there is substantial evidence of each element of the crime charged and of defendant's perpetration of such crime. *Id.* "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.*

In order to sustain a conviction under N.C. Gen. Stat. § 90-95(h)(3) (2007), the State must prove that the defendant (1) knowingly (2) transported a given controlled substance, and that (3) the amount transported was greater than the statutory threshold amount. *State v. Shelman,* 159 N.C. App. 300, 307, 584 S.E.2d 88, 94, *disc. review denied,* 357 N.C. 581, 589 S.E.2d 363 (2003). Here, defendant was charged with transporting more than 400 grams of cocaine, a Class D felony under the statute. N.C. Gen. Stat. § 90-95(h)(3)(c).

Transportation includes any actual carrying about or movement of a particular quantity of drugs from one place to another. *See State v. Outlaw,* 96 N.C. App. 192, 197, 385 S.E.2d 165, 168 (1989), *disc. review denied,* 326 N.C. 266, 389 S.E.2d 118-19 (1990). Although we have not applied the doctrine of constructive transportation to N.C. Gen. Stat. § 90-95(h)(3), we have held that the State may satisfy the transportation element by demonstrating that a defendant acted in concert with another person to move the drugs from one place to another. *State v. Lorenzo,* 147 N.C. App. 728, 732-33, 556 S.E.2d 625, 627 (2001). Under this theory, however, it is necessary that a defendant be actually or constructively present during the commission of the crime. *State v. Barnes,* 345 N.C. 184, 233, 481 S.E.2d 44, 71 (1997). "A person is constructively present during the commission of a crime if he is close enough to provide assistance if needed and to encourage the actual execution of the crime." *State v. Gaines,* 345 N.C. 647, 675-76, 483 S.E.2d 396, 413, *cert. denied,* 522 U.S. 900, 139 L. Ed. 2d 177 (1997).

Here, even in the light most favorable to the State, there is no evidence that defendant was actually or constructively present during the time that Oregon transported the half kilo of cocaine. Although the State's evidence shows that defendant maintained telephone contact with Oregon during the commission of the crime, it does not show that defendant was present or nearby when Oregon retrieved the half kilo of cocaine from his home nor when he drove it to

Denny's Restaurant. The State did not produce any evidence that defendant was close enough during the commission of the crime to provide assistance to Oregon if needed or to encourage the actual execution of the crime. Thus, we agree with defendant that the State failed to carry its burden with respect to this charge, and the trial court erred in denying defendant's motion to dismiss the charge of trafficking by transportation. Accordingly, we reverse with respect to this charge.

### III. Jury Instruction

Because we reverse defendant's Level III conviction of trafficking by transportation, we need not address defendant's argument concerning the jury instruction regarding that charge. Accordingly, we find no error in part and reverse in part.

No error in part, and reversed in part.

Judges STEELMAN and GEER concur.