IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-128

Filed 18 March 2026

Mecklenburg County, Nos. 21CR219313-590, 21CR219315-590, 21CR219316-590,
21CR219317-590, 21CR220119-590, 21CR220120-590, 21CR220121-590,
21CR220122-590, 21CR220126-590, 21CR220130-590, 21CR220134-590

STATE OF NORTH CAROLINA

v.

TYDARRIUS DAJUN SLOAN, Defendant.

Appeal by defendant from judgments entered 1 December 2023 by Judge Sally Kirby-Turner in Mecklenburg County Superior Court. Heard in the Court of Appeals 15 October 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Danielle Wilburn Allen, for the State-appellee.*
>
> *Law Office of Caryn Strickland, by Caryn Devins Strickland, for defendant-appellant.*

GORE, Judge.

Defendant Tydarrius Dajun Sloan appeals of right, pursuant to N.C.G.S. §§ 7A-27(b) and 15A-1444(a), the multiple judgments against him. Defendant pleaded guilty to the first set of indictments: assault on a female; common law robbery; possession of a firearm by a felon; and communicating threats. The jury returned guilty verdicts for the second set of indictments: possession of a firearm by a felon; assault with a deadly weapon with intent to kill inflicting serious injury

(AWDWIKISI); assault with a deadly weapon (AWDW) with intent to kill, and four counts of discharging a firearm into an occupied dwelling. Upon reviewing the record and the briefs, we discern no error and remand for the limited purpose of correcting clerical errors on the Judgment and Commitment worksheet.

## I.

On 21 June 2021, Marianna Sampson, defendant's ex-girlfriend and the mother of his child, was at a friend's home when defendant "jumped out of the bushes" with a gun. Sampson's friend began filming while defendant had an "altercation" with Sampson. Defendant slapped Sampson, pulled her hair, grabbed her phone, and pointed the gun at her face. Sampson's friend testified at trial that defendant also pointed the gun at her face and said he would "merk" her (a term representing murder, according to Sampson). Sampson reported the incident to the police.

Eight days later, on the evening of 29 June 2021, Sampson was sitting in a car outside of her parents' home when a car pulled up behind her. Sampson testified defendant approached her with a gun and told her to get out of the car and to get into his car. Sampson testified defendant threatened to shoot her father when she stated her dad might come outside. Sampson climbed out of her car but prior to getting into his car, she made a run for the house. As she ran, she testified gunshots were fired in her direction. Defendant shot multiple times as Sampson ran inside the house. There were multiple bullet holes in the home after the shooting, shattered glass, and a bullet wound to the leg of Sampson's brother. Police arrived and received

statements from Sampson and others about the incident. Neighbors testified they saw a man get out of the car and shoot towards the house and heard screaming.

Defendant was indicted for assault on a female, communicating threats, possession of a firearm by a felon, and common law robbery for the incident on 21 June. He was indicted for possession of a firearm by a felon, AWDWIKISI, AWDW with intent to kill, and four counts of discharging a firearm into an occupied dwelling for the 29 June incident. Sampson went to the District Attorney's office after the 29 June incident and told police she had lied and that it was not defendant who shot at her. Later, Sampson recanted her statement and stated *it was* defendant who shot at her.

The State sought to join the 21 June incident and the 29 June incident for trial. Defendant objected to this joinder and moved for severance of the incidents. The trial court denied defendant's objection and motion. In light of the denial, defendant pled guilty to the 21 June incident. During trial, the State sought to admit evidence from the 21 June incident and defendant objected. The trial court held a voir dire hearing outside the jury's presence and determined the evidence was admissible pursuant to Rule 404(b). The trial court gave a limiting instruction to the jury prior to allowing the State to present the 21 June evidence.

Additionally, during cross-examination of Sampson, defendant sought to introduce text messages she sent to defendant's new girlfriend, Tiasha Grant, in 2023 that demonstrated her ill will after finding out defendant also had a child with Grant.

The trial court allowed certain text messages that were considered relevant to the case about defendant and that showed Sampson's ill will, but it sustained objections to text messages that were inflammatory about Grant's baby. Defendant cross-examined Sampson extensively, impeaching her over the lies she told and the inconsistencies in her testimony.

The jury returned guilty verdicts on all the indictments. Defendant was sentenced to a consolidated term of 13 to 25 months' imprisonment for the charges on 21 June; a consecutive consolidated term of 83 to 112 months' imprisonment for AWDWIKISI, possession of a firearm by a felon, and AWDW with intent to kill; and a consecutive consolidated term of 73 to 100 months' imprisonment for the four counts of discharging a firearm into an occupied dwelling. On the Judgment and Commitment worksheet, it stated he was convicted of four counts of discharging a weapon into occupied property, a Class E felony. Defendant timely appealed his convictions.

**II.**

Defendant seeks review of four issues. The issues are as follows: (1) whether the trial court erred by excluding certain text messages between Sampson and defendant's new girlfriend; (2) whether the trial court erred by allowing the joinder of defendant's offenses and by allowing evidence from the first offense as Rule 404(b) evidence despite defendant having pled guilty to the first offense; (3) whether defendant's convictions for possession of a firearm by a felon violate his federal and

state constitutional rights to bear arms; and (4) that the judgment for discharging a firearm into an occupied dwelling contains clerical errors. Defendant properly objected and preserved issues one and two but seeks Rule 2 review of the unpreserved issue three. Issue four is properly preserved without objection.

## A.

Defendant sought to cross-examine Sampson about certain text messages sent to Grant, but the trial court excluded these citing issues with relevancy and that the texts were introduced for only inflammatory purposes. Defendant argues the text messages were relevant to show Sampson's motive for "fabricating" defendant's involvement. Defendant points to the fact Sampson recanted her allegations from the night of the 29 June incident when Sampson and defendant were reconciling their relationship, but that she re-alleged defendant's part in the 29 June incident once she found out defendant had another child with his new girlfriend. Defendant also argues the exclusion of these text messages denied him his right to an effective cross-examination against his accusers.

We review challenges regarding the admissibility of relevant evidence de novo. *Hill v. Boone*, 279 N.C. App. 335, 341 (2021). "If we determine the [evidence] was relevant for impeachment purposes, we typically also analyze whether it should have been excluded under Rule 403, which would be reviewed for abuse of discretion." *Id.* at 342. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less

probable than it would be without the evidence." N.C.R. Evid. 401. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, . . . or needless presentation of cumulative evidence." N.C.R. Evid. 403.

The trial court denied defendant the ability to question Sampson about some of the text messages sent to Grant. These text messages stated, "She looked like a crackhead," speaking of Grant, that "the baby looked like a monkey," speaking of Grant's child, that the "N-word hair won't even grow. That baby's hair won't grow," that the baby was "ugly and deformed," and stating "he's my orphan," in reference to defendant. Defendant argues these texts were relevant to show an escalation by Sampson of her hate for Grant and impeach her character. Whereas the State argues the texts were not relevant, and the court ultimately ruled these texts were "getting far afield from impeachment. . . . far afield from intent and motive," and further stated that the texts were merely "inflaming." The trial court also clarified that messages specific to "the victim's ill will towards the defendant" and messages that indicated Sampson was lying were admissible.

Relevancy is a low bar but the exclusion of the specified text messages in the present case was within the trial court's discretion. Their exclusion did not prevent the jury from hearing defendant's theory of Sampson's motive for accusing him. Defendant was afforded plenty of opportunity to impeach and question Sampson's credibility. Defendant's cross-examination of Sampson revealed how she accused

defendant of the 29 June incident, then recanted these allegations and claimed she lied, only to once again accuse defendant after finding out defendant had another child with Grant.  Sampson admitted to visiting defendant many times in jail and listing herself in the jail log as his girlfriend.  Sampson admitted to exchanging texts with Grant between 2021 and 2023 and calling her "really mean, hateful, nasty names," and admitted she sent Grant a picture of a firearm in her lap with a message to "come test it."  Defendant impeached Sampson about taking $500 from his Cash App after she previously stated defendant sent the money and wanted it back because she ended the relationship.

Although the excluded text messages may have been loosely relevant to impeach, the trial court's exclusion of these texts did not prevent defendant from putting on a complete defense.  As previously stated, defendant was able to extensively challenge Sampson's credibility.  The trial court reasoned that the additional text messages were inflammatory and did not address the motive or impeach the witness.  *See* N.C.R. Evid. 607, advisory committee's note (recognizing the impeachment "must be relevant within the meaning of Rule 401 and 403 and must in fact be impeaching."); *cf.* N.C.R. Evid. 611(a) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence").

Further, defendant's attempts to analogize the present case with *State v. Peterson* and *State v. Shannon* are unpersuasive.  The text messages in the present

case, did not "complete the story of the crime," *Peterson*, 205 N.C. App. 668, 674–75 (2010) (citation omitted), nor did they provide a direct motive for defendant's crime, as in *Shannon*, 182 N.C. App. 350, 355 (2007), *superseded by statute on other grounds*, N.C.G.S. § 15A-903(a)(1), *as recognized in State v. Zamora-Ramos*, 190 N.C. App. 420, 423–24 (2008). Instead, these text messages were exchanged two years after the crimes were committed and provided no context for the victim's accusations. Accordingly, the trial court did not abuse its discretion by excluding these text messages. Defendant's argument is without merit.

**B.**

Next, defendant argues the trial court erred by joining unrelated offenses and admitting the evidence from the first offense as Rule 404(b) evidence during the trial of the second set of offenses. We review de novo the "transactional connection" for consolidated offenses, but "absent an abuse of discretion" the trial court's decision will be upheld. *State v. Hyatt*, 355 N.C. 642, 658–59 (2002). Pursuant to N.C.G.S. § 15A-926(a), the trial court may join separate criminal offenses when "there is a transactional connection." *Id.* at 658. "If joinder would hinder or deprive defendant of his ability to present his defense, the motion [for joinder of offenses] should be denied." *State v. Greene*, 294 N.C. 418, 421 (1978).

To join separate offenses, the trial court considers "(1) the nature of the offenses charged; (2) any commonality of facts between the offenses; (3) the lapse of time between the offenses; and (4) the unique circumstances of each case." *Peterson*,

205 N.C. App. at 672. "Two or more offenses may be joined in one pleading or for trial when the offenses, whether felonies or misdemeanors or both, are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan." *State v. McCanless*, 234 N.C. App. 260, 263 (2014) (quoting N.C.G.S. § 15A-926(a) (2013)).

Defendant focuses on the distinguishing facts between the two offenses and claims the trial court abused its discretion by allowing the joinder when there was "no continuity between these events." However, the trial court made the following findings regarding its determination the two offenses were substantially similar:

> Both occurred as the defendant found and approached Ms. Sampson in front of a home where she was staying; that the defendant made demands of Ms. Sampson as he approached her; he utilized violence in order to attempt to gain control of Ms. Sampson by intimidation; that he utilized a firearm in both situations in order to threaten and intimidate Ms. Sampson; that in both instances he made verbal threats. . . . [First] to a friend who was present with Ms. Sampson . . . , and [second] . . . against Ms. Sampson's father.

Admittedly, these findings relate to defendant's challenge of the Rule 404(b) evidence allowed during trial, but these findings are more than sufficient to indicate the reasoning of the court—that there were substantial similarities to join the two offenses into one pleading.

Beyond these findings, the two offenses happened only eight days apart, and defendant committed similar offenses on both dates against the same person. He was

charged with possession of a firearm by a felon, assault on a female, common law robbery, and communicating threats on 21 June. He was charged with possession of a firearm by a felon, communicating threats, and AWDWIKISI, AWDW with intent to kill, and four counts of discharging a firearm into an occupied dwelling on 29 June. These charges were committed against Sampson and demonstrated an escalation from the earlier date to the later date. Accordingly, the evidence in the record supports the trial court's determination. Therefore, the trial court did not abuse its discretion by joining both sets of offenses into one trial.

Next, defendant argues the trial court erred by allowing the evidence from 21 June, in which defendant pled guilty, as Rule 404(b) evidence during trial for the 29 June set of offenses. We disagree.

We review the trial court's Rule 404(b) ruling to see "whether the evidence supports the findings and whether the findings support the conclusions. We review de novo the legal conclusion that the evidence is . . . within the coverage of Rule 404(b)." *State v. Pabon*, 380 N.C. 241, 257 (2022) (citation omitted). The North Carolina Rules of Evidence 404(b) is a "general rule of *inclusion*." *Id.* at 258. "Relevant evidence of past crimes, wrongs, or acts by a defendant are generally admissible for any one or more of the purposes enumerated in Rule 404(b)'s non-exhaustive list." *Id.* (cleaned up). The list includes "motive, opportunity, intent, preparation, plan, knowledge, and identity." *State v. Beckelheimer*, 366 N.C. 127, 130 (2012) (cleaned up). "Such evidence is admissible as long as it is relevant to any fact

or issue other than the defendant's propensity to commit the crime." *Id.* (cleaned up). Rule 404(b) inclusion is "constrained by the requirements of similarity and temporal proximity." *State v. Al-Bayyinah*, 356 N.C. 150, 154 (2002).

In the present case, defendant does not challenge the trial court's findings in support of its conclusion to admit evidence from the 21 June incident. The trial court found there were substantial similarities: defendant and Sampson were involved in both incidents, the nature of the domestic violence between the two of them; a firearm was used in both assaults; threats were made; and it was all done to gain control over Sampson. The trial court found there was temporal proximity because the incidents happened only eight days apart. The trial court concluded the evidence was admissible under Rule 404(b) "not to show the defendant's propensity to commit the act on June 29th of 2021, but to show his intent, his motive, his modus operandi, and in order to show the identity of the defendant as the perpetrator of the June 29, 2021 incident." The evidence supports the trial court's findings of substantial similarity and temporal proximity. Accordingly, these findings support the trial court's conclusion of admissibility under Rule 404(b).

Defendant argues that even if the trial court could admit the evidence of the 21 June incident under Rule 404(b), for purposes of prejudice pursuant to Rule 403, the evidence should have been excluded. We disagree.

We review for abuse of discretion the trial court's Rule 403 determination that "any undue prejudice to the defendant [was] far outweighed by the relevance."

*Beckelheimer*, 366 N.C. at 130. Under Rule 403, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." N.C.R. Evid. 403 (cleaned up). In *Beckelheimer*, our Supreme Court considered the following to decide whether the trial court abused its discretion: the trial court's limiting instruction to the jury; the trial court hearing challenged evidence outside the presence of the jury; the trial court hearing arguments from counsel; and the trial court limiting some testimony it determined was not sufficiently similar. 366 N.C. at 133. The Supreme Court concluded the trial court had carefully handled the process and carefully considered the evidence. *Id.* It concluded, the trial court did not abuse its discretion when it determined "the danger of unfair prejudice did not substantially outweigh the probative value of the evidence." *Id.*

In the present case, the trial court considered the evidence outside the presence of the jury, listened to the arguments of counsel, and gave a limiting instruction for the 404(b) evidence before it was presented to the jury. The limiting instruction explained that the jury should only consider the evidence from 21 June for the purpose of identifying the defendant, for a motive for the crime, for intent, and that defendant had a scheme in the crime charged. The trial court's decision was not manifestly unsupported by reason; therefore, we conclude the trial court did not abuse its discretion when ruling on the Rule 403 prejudicial effect.

**C.**

Defendant seeks this Court's invocation of Rule 2 of the North Carolina Rules of Appellate Procedure to review an unpreserved constitutional argument. Specifically, defendant argues N.C.G.S. § 14-415.1 is both facially and as-applied unconstitutional because it violates his right to bear arms pursuant to the Second and Fourteenth Amendment. *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022).

Constitutional challenges that are not argued at the trial court level are unpreserved for appellate review. *State v. Gobal*, 186 N.C. App. 308, 320 (2007), *aff'd,* 362 N.C. 342 (2008). We review unpreserved issues under the guise of Rule 2 in rare cases: "to prevent manifest injustice to a party, or to expedite a decision in the public interest." N.C.R. App. P. 2. "This assessment—whether a particular case is one of the rare instances appropriate for Rule 2 review—must necessarily be made in light of the *specific circumstances of individual cases and parties*, such as whether substantial rights of an appellant are affected." *State v. Campbell*, 369 N.C. 599, 602 (2017) (internal quotation marks and citations omitted).

Defendant has failed to demonstrate his unpreserved constitutional argument would work a manifest injustice or is an issue that is in the public interest. Accordingly, we determine that defendant's constitutional challenge does not merit Rule 2 review; and because it is unpreserved, we will not consider it for the first time on appeal. N.C.R. App. P. 10(a).

**D.**

Lastly, defendant argues the trial court made a clerical error on one of the Judgment and Commitment worksheets. Defendant was convicted of four counts of discharging a firearm into an occupied dwelling, and this is a Class D felony pursuant to N.C.G.S. § 14-34.1. Yet, on defendant's Judgment and Commitment worksheet, it states he was convicted of four counts of discharging a weapon into occupied property, a Class E felony. "When, on appeal, a clerical error is discovered in the trial court's judgment or order, it is appropriate to remand the case to the trial court for correction because of the importance that the record speak the truth." *State v. Newsome*, 264 N.C. App. 659, 665 (2019) (citation omitted). Therefore, we remand this case for the limited purpose of correcting the Judgment and Commitment worksheet to accurately reflect defendant's convictions and the felonies they entail.

## III.

For the foregoing reasons, we discern no error apart from the clerical errors on the Judgment and Commitment worksheet. Accordingly, we remand for the limited purpose of correcting the clerical errors on defendant's four convictions of discharging a firearm into an occupied dwelling.

NO ERROR, REMANDED IN PART.

Judges COLLINS and STADING concur.