IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA 19-365

 Filed: 6 October 2020

Wake County, No. 17 CRS 1878

STATE OF NORTH CAROLINA,

 v.

WALLACE BRADSHER, Defendant.

 Appeal by Defendant from judgment entered 7 September 2018 by Judge Paul

C. Ridgeway in Superior Court, Wake County. Heard in the Court of Appeals 7

January 2020.

 Attorney General Joshua H. Stein, by Deputy Solicitor General James W.
 Doggett for the State.

 Assistant Appellate Defender Michele A. Goldman and Appellate Defender
 Glenn Gerding, for Defendant.

 McGEE, Chief Judge.

 Wallace Bradsher (“Mr. Bradsher” or “Defendant Bradsher”) was indicted by a

grand jury in a superseding indictment on 24 October 2017 charging him with

conspiracy to commit the offense of obtaining property by false pretenses, obtaining

property by false pretenses, aiding and abetting the offense of obtaining property by

false pretenses, three counts of felony obstruction of justice, and failure to discharge

the duties of his office. At trial, Defendant Bradsher, representing himself, moved to

dismiss all charges at the close of the State’s evidence. The motion to dismiss was
 STATE V. BRADSHER

 Opinion of the Court

denied. Defendant Bradsher declined to present any evidence. A jury found

Defendant Bradsher not guilty of conspiracy and one count of obstructing justice and

guilty of felony obstruction of justice, misdemeanor obstruction of justice, two counts

of obtaining property by false pretenses and failure to discharge his duties.

 I. Factual and Procedural History

 Mr. Bradsher was elected to the position of district attorney for Prosecutorial

District 9A, comprised of Person and Caswell Counties, and assumed office on 1

January 2011. Prior to his election, Mr. Bradsher was a criminal defense attorney in

private practice and employed his wife, Pam Bradsher (“Ms. Bradsher”), at his law

office. When he became district attorney, Mr. Bradsher hired Ms. Bradsher to work

as support staff in his district attorney’s office.

 In 2013, Craig Blitzer (“Mr. Blitzer”), was a criminal defense attorney in

private practice considering running for district attorney for Prosecutorial District

17A, composed solely of Rockingham County, just west of District 9A. Like Mr.

Bradsher, Mr. Blitzer’s wife, Cindy Blitzer (“Cindy or Ms. Blitzer”), worked at his law

firm in private practice. Mr. Blitzer was aware that Ms. Bradsher worked for Mr.

Bradsher in the neighboring prosecutorial district and Mr. Blitzer hired his wife to

work on his support staff in his district attorney’s office. He asked Mr. Bradsher

whether he had any issues employing his wife at the district attorney’s office and Mr.

Bradsher said he did not.

 -2-
 STATE V. BRADSHER

 Opinion of the Court

 Mr. Blitzer did run for the district attorney seat and was elected in 2014. Ms.

Blitzer was close to finishing nursing school, but quit school to help Mr. Blitzer with

his campaign. After taking office, Mr. Blitzer hired Ms. Blitzer to work for him in his

district attorney’s office.

 The North Carolina Administrative Office of the Courts (“AOC”) soon noticed

both Mr. Blitzer and Mr. Bradsher had employed their wives in their respective

offices. Margaret Wiggins (“Ms. Wiggins”), AOC’s Human Resources Officer, emailed

both Mr. Bradsher and Mr. Blitzer on 8 January 2015, and informed each that hiring

their wives violated the anti-nepotism laws of the State Ethics Act and they were not

permitted to do so. Ms. Wiggins suggested they seek a waiver from the State Ethics

Commission if they wanted to continue to employ their own wives.

 As a result of the information from Ms. Wiggins, Mr. Bradsher sought a waiver

of the State Ethics Act from the Commission so he could continue Ms. Bradsher’s

employment. Mr. Bradsher and Mr. Blitzer were told they could not employ their

own wives while awaiting a decision on a waiver request. Mr. Bradsher suggested,

as an interim solution, that he and Mr. Blitzer could hire each other’s wife as an

employee. Both hoped the employment change would be temporary. Mr. Bradsher

sought approval from Ms. Wiggins who, after consulting with counsel for AOC,

approved the plan because it did not violate the Act.

 -3-
 STATE V. BRADSHER

 Opinion of the Court

 The Bradshers and the Blitzers met at a restaurant to discuss the plan. At the

meeting, Mr. Blitzer told Mr. Bradsher that Ms. Blitzer wanted to return to school to

complete her nursing degree eventually. Mr. Bradsher said he would try to help Ms.

Blitzer finish her nursing degree at a community college.

 Ms. Bradsher quit her job in district 9A and was hired in district 17A. At the

same time, Ms. Blitzer quit her job in district 17A and was hired in district 9A. As

an employee of Mr. Bradsher, Ms. Blitzer initially worked in a secondary office

located in Caswell County, which was closer to the Blitzers’ residence in Rockingham

County. Her supervisor was an assistant district attorney, John Stultz III (“Mr.

Stultz”), who was in charge of that office. As her supervisor, Mr. Stultz was

responsible for approving Ms. Blitzer’s hours in BEACON, the timekeeping and

payroll system used by AOC. Ms. Blitzer would submit her hours worked in BEACON

for Mr. Stultz’s approval.

 Five weeks after beginning work at the District 9A Caswell office, Ms. Blitzer

decided the office arrangement was unacceptable. She testified that she “had no

space to work[,]” lacked a computer, and that the commute was too long. She

discussed these issues with Mr. Stultz and with her husband, Mr. Blitzer. She asked

Mr. Blitzer to discuss the issue with Mr. Bradsher. At trial, she testified her husband

said he spoke with Mr. Bradsher and he said she could work out of the Rockingham

County office of Prosecutorial District 17A while still being employed by District 9A.

 -4-
 STATE V. BRADSHER

 Opinion of the Court

She testified she was happy about the change because the new location “was air

conditioned and cool in that office and there was a desk and an office for [her] to work

in with a computer[,]” and “it was much closer to home[.]” She testified she was also

permitted to work at home if needed.

 Ms. Blitzer testified that, while she was working in the Caswell office, she

would “go to the courtroom with Mr. Stultz and [] speak to victim witnesses, basically

anything Mr. Stultz needed [her] to do.” As part of her job responsibilities, both before

and after the change, Ms. Blitzer was asked to work on cases that District 17A had

transferred to 9A because of conflicts of interest that prevented Mr. Blitzer from

working on them. One of her responsibilities was a “conflict case” involving an infant

homicide called the Shockley case. Mr. Stultz was the attorney assigned to the

Shockley case. Ms. Blitzer testified she organized the “extensive” evidence for the

Shockley case.

 The summer of 2015, the State Ethics Commission informed Mr. Bradsher the

State Ethics Act’s anti-nepotism laws were not waivable. Ms. Bradsher soon resigned

from Mr. Blitzer’s office and took a new job at a local community college. When Ms.

Bradsher resigned, Mr. Blitzer hired Tyler Henderson (“Mr. Henderson”). Although

he was employed by District 17A, Mr. Blitzer assigned Mr. Henderson to work in

District 9A exclusively on 9A matters. Mr. Blitzer did not supervise Mr. Henderson’s

work. Ms. Blitzer, meanwhile, was still employed by District 9A but working in 17A.

 -5-
 STATE V. BRADSHER

 Opinion of the Court

 Sometime in 2015, an assistant district attorney in Mr. Blitzer’s office told the

State Bureau of Investigation (“SBI”) that Ms. Blitzer was not working the hours she

said she was and the SBI began investigating. Mr. Blitzer learned about the

investigation in December 2015, but did not tell his wife or Mr. Bradsher about it.

The 2015 investigation was quickly dropped, but a subsequent internal SBI

investigation did not explain why.

 Mr. Stultz asked Mr. Bradsher to reassign the Shockley case in August 2015

and Mr. Bradsher took over the case himself. In early March 2016, Mr. Bradsher and

Mr. Henderson went to the District 17A office, where Ms. Blitzer worked, to get the

Shockley case file from her in order to prepare the case for trial. Mr. Blitzer testified

that he told Mr. Bradsher about the 2015 SBI investigation that day. According to

Mr. Blitzer, Mr. Bradsher told him to vary Ms. Blitzer’s time by entering vacation

and sick time. Time records produced by AOC and introduced at trial however,

indicated that the only varied hours entered by Ms. Blitzer occurred between 21

January and 17 February 2016. Mr. Blitzer testified that Ms. Blitzer worked the

hours entered into BEACON until the Shockley case file was taken in March 2016,

but after that, Ms. Blitzer “had nothing to do.” Although Ms. Blitzer testified she

tried to call Mr. Bradsher about having nothing to do, she did not recall whether she

left a message and did not recall sending him any text messages. She then testified

 -6-
 STATE V. BRADSHER

 Opinion of the Court

she thought she probably did leave him a message but did not remember what she

said and afterward solely relied on her husband to communicate with Mr. Bradsher.

 Ms. Blitzer had always planned to return to school to complete her nursing

degree. Ms. Blitzer learned that, despite Mr. Bradsher’s efforts, she would not be

able to complete her nursing degree at Person Community College as he had

suggested, because, after she completed the required testing, they wanted her to

retake almost half the curriculum she had already completed before she withdrew

from her previous program. Ms. Blitzer was unwilling to do so. She began exploring

other ways to finish her degree and chose to apply to an accelerated nursing program

which required her to retake some classes. Ms. Blitzer began online courses while

still employed by District 9A and working in District 17A. Mr. Blitzer directed two

of his employees to help Ms. Blitzer complete the online courses by logging into Ms.

Blitzer’s online account and helping her complete homework and a test during work

hours.

 In April 2016, soon after the Shockley case file was taken by Mr. Bradsher, Ms.

Blitzer enrolled in a full-time nursing program at South University physically located

in High Point, North Carolina, while still being employed by the State. She took

courses there four days a week. Although she was not working during this time, Ms.

Blitzer continued entering hours into BEACON as though she was working. The time

records introduced at trial showed she continued to do so until she left her position.

 -7-
 STATE V. BRADSHER

 Opinion of the Court

 Mr. Blitzer testified that, during April 2016, he and Mr. Bradsher traveled

together to a statewide meeting of the Conference of District Attorneys in Ocracoke,

North Carolina. During the drive to the meeting, Mr. Blitzer told Mr. Bradsher, “[Ms.

Blitzer] ha[d] no work because you took the Shockley case and no one is calling her

back as to what to do.” Mr. Blitzer testified that Mr. Bradsher’s “response was to

just have her concentrate on school and he’d get back with her.” Mr. Blitzer testified

Ms. Blitzer never received any further work from Mr. Bradsher after that

conversation. He testified that, to the best of his knowledge, his wife was still

inputting hours as if she were working. He testified he did not bring the issue up

again with Mr. Bradsher until October 2016.

 Mr. Blitzer further testified he and his wife were experiencing financial

difficulties that were not resolved during this time and that they still needed Ms.

Blitzer’s paycheck. Ms. Blitzer testified she continued to submit hours without

working because “[she] needed a job and we had bills to pay.” Mr. Blitzer

acknowledged their financial difficulties contributed to his decision not to say

anything about “this nonwork issue” to Mr. Bradsher.

 In April 2016, the assistant district attorney who originally reported a problem

with Ms. Blitzer’s hours to the SBI again reported to the SBI that Ms. Blitzer was

attending school during work hours. The SBI opened a new investigation led by SBI

Agent David Whitley (“Agent Whitley”). Agent Whitley interviewed two 17A

 -8-
 STATE V. BRADSHER

 Opinion of the Court

assistant district attorneys about Ms. Blitzer’s work hours and another SBI agent

watched Ms. Blitzer attend classes at South University during work hours.

 Mr. Blitzer learned about the new SBI investigation in June 2016 and,

although he consulted an attorney, he did not tell Ms. Blitzer or Mr. Bradsher about

the investigation. Agent Whitley contacted Mr. Bradsher and they had a phone

conversation during which Agent Whitley told Mr. Bradsher about the complaint

regarding Ms. Blitzer’s payment for hours not worked and they also arranged a time

for Agent Whitley to interview Mr. Bradsher on 6 September 2016.

 Mr. Bradsher called Mr. Stultz into his office on 15 August 2016 and told him

the SBI was investigating Ms. Blitzer’s hours. Mr. Stultz mistakenly believed he was

no longer required to approve Ms. Blitzer’s hour submissions on BEACON and had

not done so since March 2016. He told Mr. Bradsher he could approve the hours Ms.

Blitzer had submitted since his last approval, but before doing so he asked Mr.

Bradsher if Ms. Blitzer was still doing the shared-employee program. Mr. Bradsher

responded that she was. Mr. Stultz logged onto BEACON and approved the hours.

 Agent Whitley interviewed Mr. Bradsher on 6 September 2016 in Mr.

Bradsher’s office and told him the SBI was investigating whether Ms. Blitzer was

working the hours she claimed. Agent Whitley testified that Mr. Bradsher told him

that Ms. Blitzer worked on conflict cases with Mr. Stultz, did special projects assigned

by Mr. Bradsher, and helped with District 17A matters under a shared-employee

 -9-
 STATE V. BRADSHER

 Opinion of the Court

program arranged between the two districts and modeled after a federal shared-

employee program between state prosecutors and federal U.S. Attorney offices. Agent

Whitley testified that Mr. Bradsher said Ms. Blitzer worked under that program as

an employee of 17A while working in 9A.

 During the interview, Mr. Bradsher identified for Agent Whitley employees

who worked or had contact with Ms. Blitzer. Agent Whitley asked for additional

information about the special projects Mr. Bradsher said he assigned Ms. Blitzer, but

Mr. Bradsher told Agent Whitley he could not recall further details. Mr. Bradsher

said he would check with Ms. Blitzer, but Agent Whitley told him not to contact her.

At trial, Ms. Blitzer testified she had never been assigned any special projects. Agent

Whitley testified the “overall impression [Mr. Bradsher] gave [him] was that [Ms.

Blitzer] was working[,]” but his impression was not tied to any particular statement

made by Mr. Bradsher. He testified that if Mr. Bradsher provided information

showing Ms. Blitzer was working, the investigation would have been shorter. The

investigation continued into 2017, with Agent Whitley interviewing Mr. Bradsher’s

employees over several weeks to determine the extent to which Ms. Blitzer was

working.

 The Blitzers they contacted Mr. Bradsher in October 2016 and Ms. Blitzer said

she wanted to resign following media scrutiny of her employment. The Blitzers both

testified Mr. Bradsher told Ms. Blitzer not to resign. The Blitzers also both testified

 - 10 -
 STATE V. BRADSHER

 Opinion of the Court

Mr. Bradsher told Ms. Blitzer to keep entering hours into BEACON and that he would

tell investigators she had been working on special projects. Ms. Blitzer testified she

continued to submit time for hours she never worked.

 Gayle Peed (“Ms. Peed”), Mr. Bradsher’s administrative assistant, testified

that on 24 October 2016, Mr. Bradsher directed her to call Ms. Blitzer and fire her

effective that day because Ms. Blitzer would not speak with him. She did so. Ms.

Peed also testified that, at Mr. Bradsher’s instruction, she responded to an email from

AOC regarding Ms. Blitzer’s time record. Ms. Peed testified that Ms. Blitzer never

responded to a request to verify her hours and that, according to Mr. Bradsher’s

direction, the reply email informed AOC that “[Mr. Bradsher and she] couldn’t certify

[Ms. Blitzer’s] time because [Ms. Blitzer] was under investigation.”

 Mr. Blitzer did not give a statement to Agent Whitley until May 2017. Mr.

Blitzer pleaded guilty to misdemeanor failure to discharge duties, repaid the State

for $48,000 for the money Ms. Blitzer had wrongfully accrued, consented to

suspension of his law license, and agreed to cooperate in the civil and criminal cases

against Mr. Bradsher. In exchange, the State agreed to decline any further

prosecution of either of the Blitzers for any crimes related to Ms. Blitzer’s

employment.

 A grand jury returned a bill of indictment on 24 October 2017 against Mr.

Bradsher with seven counts, charging him with conspiracy to obtain property by false

 - 11 -
 STATE V. BRADSHER

 Opinion of the Court

pretenses, failure to discharge his duties, two counts of obtaining property by false

pretenses, and three counts of obstructing justice. Mr. Bradsher was tried on the

charges on 29 May 2018 in Superior Court, Wake County.

 During the State’s case, the trial court excluded testimony from Ms. Peed as

hearsay, which ruling Mr. Bradsher challenges on appeal. After the State rested, Mr.

Bradsher moved to dismiss each count based on insufficiency of evidence. The trial

court denied his motion to dismiss. Mr. Bradsher declined to present his own

evidence. At the close of all evidence, Mr. Bradsher renewed his motion to dismiss,

which was again denied.

 On 18 June 2018, the jury found Mr. Bradsher not guilty of conspiracy and one

count of obstructing justice but found him guilty of failure to discharge his duties,

felony obstruction of justice based on the provision of false information to Agent

Whitley, misdemeanor obstruction of justice based on the provision of false

information to Mr. Stultz, obtaining property by false pretenses based on the theory

of acting in concert, and aiding and abetting the obtaining of property by false

pretenses. The trial court sentenced Mr. Bradsher to 4 to 14 months imprisonment

and a consolidated term of 6 to 17 months, suspended, and placed Mr. Bradsher on

24 months of supervised probation. The trial court arrested judgment on the count

of obtaining property by false pretenses based on a theory of aiding and abetting, due

to double jeopardy concerns. Mr. Bradsher appeals.

 - 12 -
 STATE V. BRADSHER

 Opinion of the Court

 II. Analysis

 Defendant Bradsher argues four issues on appeal: (1) “[t]he State failed to

establish [Defendant] personally committed or acted in concert to commit obtaining

property by false pretenses”; (2) “[t]he State failed to prove [Defendant] impeded,

delayed, and obstructed the investigation by intentionally making false statements

to Agent Whitley on 6 September 2016”; (3) “[t]he trial court erred in excluding [Ms.]

Peed’s testimony about [Defendant]’s statements”; and (4) “[t]he trial court plainly

erred in failing to instruct the jury on the specific false representations alleged in the

indictment.”

 A. Obtaining Property by False Pretenses

 Defendant first argues the trial court erred in denying his motion to dismiss

because “[t]he State failed to establish Mr. Bradsher personally committed or acted

in concert to commit obtaining property by false pretenses[.]” In reviewing the denial

of a defendant’s motion to dismiss for sufficiency of the evidence, “the trial court must

consider all evidence admitted, whether competent or incompetent, in the light most

favorable to the State, giving the State the benefit of every reasonable inference and

resolving any contradictions in its favor.” State v. Chekanow, 370 N.C. 488, 492, 809

S.E.2d 546, 549-50 (2018) (citations and internal quotation marks omitted).

“Whether the State presented substantial evidence of each essential element of the

offense is a question of law; therefore, we review the denial of a motion to dismiss de

 - 13 -
 STATE V. BRADSHER

 Opinion of the Court

novo.” Id. at 492, 809 S.E.2d at 550 (citation omitted). We hold there was insufficient

evidence to support a conviction for obtaining property by false pretenses based on

theory of acting in concert. We vacate the conviction of obtaining property by false

pretenses.

 Our Supreme Court has defined the elements of the crime of obtaining property

by false pretenses in N.C. Gen. Stat. § 14-100 as follows: “(1) a false representation of

a subsisting fact or a future fulfillment or event, (2) which is calculated and intended

to deceive, (3) which does in fact deceive, and (4) by which one person obtains or

attempts to obtain value from another.” State v. Cronin, 299 N.C. 229, 242, 262

S.E.2d 277, 286 (1980) (citation omitted). The State may establish a person is guilty

of the crime either because he personally committed the offense or because he “acted

in concert” to commit it. In the present case, the State did not argue Defendant

personally committed all the elements of the offense; therefore, the State was

required to show Defendant “acted in concert.”

 Our Supreme Court has noted

 the principle of concerted action need not be overlaid with
 technicalities. It is based on the common meaning of the
 phrase “concerted action” or “acting in concert.” To act in
 concert means to act together, in harmony or in conjunction
 one with another pursuant to a common plan or purpose.
 These terms mean the same in the law of crimes as they do
 in ordinary parlance.

 - 14 -
 STATE V. BRADSHER

 Opinion of the Court

State v. Joyner, 297 N.C. 349, 356, 255 S.E.2d 390, 395 (1979) (internal citation

omitted). Thus,

 [i]t is not . . . necessary for a defendant to do any particular
 act constituting at least part of a crime in order to be
 convicted of that crime under the concerted action principle
 so long as he is present at the scene of the crime and the
 evidence is sufficient to show he is acting together with
 another who does the acts necessary to constitute the crime
 pursuant to a common plan or purpose to commit the crime.

Id. at 357, 255 S.E.2d at 395 (emphasis added). “A defendant’s presence at the scene

may be either actual or constructive. A person is constructively present during the

commission of a crime if he is close enough to provide assistance if needed and to

encourage the actual execution of the crime.” State v. Gaines, 345 N.C. 647, 675-76,

483 S.E.2d 396, 413 (1997) (internal citations omitted).

 In the present case, Defendant argues, relying on Gaines, State v. Greenlee,

227 N.C. App. 133, 741 S.E.2d 498 (2013) and State v. Zamora-Ramos, 109 N.C. App.

420, 660 S.E.2d 151 (2008) that the State did not show “Mr. Bradsher’s actual or

constructive presence when [Ms. Blitzer] entered fraudulent hours in BEACON[,]”

because “[n]o evidence demonstrated Mr. Bradsher was with [Ms. Blitzer] or

otherwise actually present when [Ms. Blitzer] submitted her fraudulent hours[,

t]here was no evidence of Mr. Bradsher’s constructive presence when [Ms. Blitzer]

entered her hours in Rockingham County[,]” and “[n]othing suggested Mr. Bradsher

 - 15 -
 STATE V. BRADSHER

 Opinion of the Court

was communicating with [Ms. Blitzer] by phone or email when [Ms. Blitzer]

submitted the fraudulent hours.”

 The State, in turn, argues Mr. Bradsher was constructively present because he

“was close enough to help Ms. Blitzer defraud the State” and “actually did help

her . . . . by tricking his employee, Mr. Stultz, into logging into B[EACON] and

approving her hours.” Furthermore, the State argues Mr. Bradsher was “close

enough to encourage Ms. Blitzer to defraud the State” and “actually did so” by ‘telling

Mr. Blitzer to have her ‘concentrate on school.’” In response to Defendant’s argument

that Mr. Bradsher was not close enough to assist Ms. Blitzer, the State argues,

relying on State v. Barnes, that “Mr. Bradsher’s proximity to Ms. Blitzer is

irrelevant[,]” because “[c]onstructive presence turns on whether Mr. Bradsher was

operationally close enough to help her, not on his ‘actual distance’ from her.” The

State also argues it is “irrelevant that Mr. Bradsher might not have helped or

encouraged Ms. Blitzer immediately before or after she submitted her hours[,]”

because the crime at issue was a “continuing act” that Mr. Bradsher “encouraged.”

 After reviewing the record and the caselaw cited in the briefs, we hold the State

did not establish actual or constructive presence and, therefore, there is insufficient

evidence to establish Defendant committed the crime of obtaining property by false

pretenses based on the theory of acting in concert.

 - 16 -
 STATE V. BRADSHER

 Opinion of the Court

 As an initial matter, the State did not argue at trial or on appeal that Mr.

Bradsher was actually present when Ms. Blitzer logged false hours in BEACON.

Therefore, the State must show constructive presence, which requires showing that

Mr. Bradsher “[wa]s close enough to provide assistance if needed and to encourage

the actual execution of the crime.” Gaines, 345 N.C. at 675-76, 483 S.E.2d at 413

(citation omitted). The criminal conduct alleged is obtaining property by false

pretenses—the false pretenses alleged in count II in the bill of indictment being the

submission of “fraudulent entries of hours worked for [Ms.] Blitzer to the State of

North Carolina, Administrative Office of the Courts in Wake County, North Carolina,

indicating the fact that she was entitled to be compensated for hours that [Mr.

Bradsher] and his co-conspirators knew [she] had not worked.” The record shows Ms.

Blitzer submitted the falsified hours through BEACON from her work location in an

office of the 17A district attorney’s office in Rockingham County. As Mr. Bradsher

argues, he was not physically present or anywhere near this office when Ms. Blitzer

inputted her hours; rather, he was at his own office in District 9A. Moreover, there

is no evidence in the record to suggest Mr. Bradsher was in contact by phone or email

to lend help or encouragement to Ms. Blitzer when she submitted the hours.

 The State argues Mr. Bradsher was “close enough to help” Ms. Blitzer and he

“actually did help her . . . . by tricking his employee, Mr. Stultz, into logging into

B[EACON] and approving her hours.” Although the record does show Mr. Bradsher

 - 17 -
 STATE V. BRADSHER

 Opinion of the Court

told Mr. Stultz to approve the hours, that alone does not satisfy the requirement for

constructive presence. Mr. Stultz’s approval of the hours came long after and far

away from the “actual execution of the crime” alleged in the indictment— that is, Ms.

Blitzer’s submission of falsified hours at her computer in Rockingham County.

Although Mr. Bradsher’s conversation with Mr. Stultz may have helped cover up that

crime, the actual series of acts at issue had already been completed elsewhere. Thus

Mr. Bradsher’s acts did not help Ms. Blitzer in the actual execution of the offense.

Any help Mr. Bradsher provided after the fact by justifying her hours to Mr. Stultz

was too remote in both time and distance to support Defendant Bradsher’s

constructive presence “to provide assistance if needed and to encourage the actual

execution of the crime.” Gaines, 345 N.C. at 675-76, 483 S.E.2d at 413.

 The State concedes Mr. Bradsher was not “near her or in contact with her”

when Ms. Blitzer entered the fraudulent hours. Nevertheless, the State argues in its

brief that “Mr. Bradsher’s proximity to Ms. Blitzer is irrelevant”—that “[c]onstructive

presence turns on whether Mr. Bradsher was operationally close enough to help her,

not on his ‘actual distance’ from her.” The State cites State v. Barnes, 91 N.C. App.

484, 487, 372 S.E.2d 352, 354 (1988), aff’d as modified, 324 N.C. 539, 380 S.E.2d 118

(1989) (per curiam), in support of its contention. The State’s reliance on Barnes is

misplaced.

 - 18 -
 STATE V. BRADSHER

 Opinion of the Court

 In Barnes, the defendant and several others were paid by the defendant’s uncle

to go to the house of the uncle’s former girlfriend and “rough her up” and to “rough

up” her boyfriend if he “got in the way.” Id. at 486, 372 S.E.2d at 353. Two of the

men approached the house while the defendant and another man stayed back. The

two men assaulted the girlfriend and her boyfriend, but the boyfriend escaped and

was caught by the defendant, who fired a gun ordering the boyfriend to return to the

house with him and the other man. The trial testimony indicated the defendant was

waiting either “down the road” or “five or six yards” from the house. The defendant

was convicted of burglary based on the theory of acting in concert.

 On appeal, the defendant argued the trial court erred in not dismissing the

charge because he was not “present” when the other two assailants broke into the

house. This Court held the State satisfied the requirement of constructive presence,

noting that whether the defendant was five or six yards away or down the road, he

was close enough to provide assistance by firing a gun to halt the fleeing victim. Id.

at 487-88, 372 S.E.2d at 354. In so holding, the Barnes Court said “this Court has

held that actual distance is not determinative, but that ‘the accused must be near

enough to render assistance if need be and to encourage the actual perpetration of

the crime.’” Id. at 487, 372 S.E.2d at 354 (citation omitted).

 The State turns the rule stated in Barnes on its head by arguing that physical

proximity is “irrelevant” to the question of constructive presence. Barnes makes clear

 - 19 -
 STATE V. BRADSHER

 Opinion of the Court

that, while actual distance is not always “determinative” as to whether a defendant

is present, such that a defendant some physical distance away can still be

constructively present, actual distance remains highly relevant. There, this Court

expressly noted the defendant was either five or six yards away or, at most, down the

road, and the testimony at trial demonstrated he was physically close enough to

render assistance, because he did so at the time of the actual perpetration of the

crime, just after the house was broken into and as the assault on the occupants was

occurring. In contrast, in the present case, Defendant Bradsher was not even in the

same county when Ms. Blitzer recorded her false hours. Holding Defendant was near

enough to give assistance and encouragement to Ms. Blitzer at that time, as the State

requests in arguing “proximity is irrelevant to the question of constructive presence,”

would sever the “presence” requirement from the theory of acting in concert.

 The circumstances in the case before this Court are analogous to State v.

Greenlee, 227 N.C. App. 133, 741 S.E.2d 498 (2013), where this Court held a motion

to dismiss a charge for acting in concert to obtain property by false pretenses was

improperly denied where there was no evidence the “defendant was present, nearby,

or even in the same county.” 227 N.C. App. 133, 138, 741 S.E.2d 498, 502 (2013)

(emphasis added). In that case, the false pretense and the criminal act at issue

involved the sale of stolen goods at pawn shops. Id. The State attempts to distinguish

Greenlee by arguing that, here, “when Mr. Bradsher assisted Ms. Blitzer’s crime, he

 - 20 -
 STATE V. BRADSHER

 Opinion of the Court

was actually closer to the scene of the crime in Wake County, where the fraud

culminated, than Ms. Blitzer was herself.” As we have previously discussed, Mr.

Bradsher’s instructions to Mr. Stultz were too remote in distance and time to satisfy

the requirement of constructive presence. Even so, the relevant “scene of the crime”

for purposes of the presence requirement is not where the “fraud culminated” but

where the “actual execution of the crime” occurred—the scene where the criminal acts

at issue were perpetrated.1 In this case, that is Rockingham County, where Ms.

Blitzer submitted the fraudulent work hours.

 The State also attempts to distinguish Greenlee by arguing that “unlike here,

there was no suggestion that the defendant could have assisted remotely in the

crimes at issue.” Presumably, the “remote assistance” to which the State refers is

Mr. Bradsher’s ability to call, text, or email Ms. Blitzer if there was a problem in

submitting hours.2 But our courts have not held the actor’s mere ability to contact or

be contacted by another for assistance while the act was being committed was

sufficient to show the other’s constructive presence at the scene when the crime was

 1 State v. Louchheim, 296 N.C. 314, 250 S.E.2d 630 (1979), on which the State relies,
established only that Wake County is a permissible venue for prosecution of obtaining property by
false pretenses where some overt acts in furtherance of a conspiracy to defraud a state agency occurred
there—not that it is the only permissible venue in such a case, nor that such location would even
qualify as a “scene of the crime” for purposes of the theory of acting in concert, as distinguished from
conspiracy.
 2 To the extent those acts were assistance, they were, as discussed above, too remote in both

distance and time from the act to satisfy the requirement that the defendant be “close enough to
provide assistance if needed and to encourage the actual execution of the crime.” Gaines, 345 N.C. at
675-76, 483 S.E.2d at 413.

 - 21 -
 STATE V. BRADSHER

 Opinion of the Court

actually committed. Indeed, in State v. Zamora-Ramos, this Court held there was

insufficient evidence to support a conviction for trafficking in cocaine by

transportation based on the theory of acting in concert even where the defendant

“maintained telephone conduct with [the actor] during the commission of the crime,”

because “[t]he State did not produce any evidence that defendant was close enough

during the commission of the crime to provide assistance to [the actor] if needed or to

encourage the actual execution of the crime.” State v. Zamora-Ramos, 190 N.C. App.

420, 425-26, 660 S.E.2d 151, 155 (2008). In the present case, there is no evidence that

Mr. Bradsher engaged in contact of any kind with Ms. Blitzer when she was actually

executing the crime. To hold the theory of acting in concert would be satisfied merely

where “remote assistance” is possible would broadly expand the universe of criminal

conduct under this theory.

 Finally, the State argues Ms. Blitzer engaged in “successive acts of

misrepresentation [that] were in essence a continuing act” and, therefore, it is

irrelevant that Mr. Bradsher might not have helped or encouraged Ms. Blitzer when

she submitted the hours. In support of this contention, the State cites State v.

Williams, in which this Court held a continuous pattern of food stamp fraud could be

considered a “continuous act” and thus reach the monetary threshold for a felony.

101 N.C. App. 412,415, 399 S.E.2d 348, 350 (1991). Williams is inapposite, however,

because it interprets N.C. Gen. Stat. § 108A-53, the statute criminalizing food stamp

 - 22 -
 STATE V. BRADSHER

 Opinion of the Court

fraud and, specifically, at which level the conduct covered can be treated as a felony.

Although food stamp fraud involves a kind of false representation, it is a distinct

offense from obtaining property by false pretenses. More fundamentally, it is not

relevant to what constitutes the “execution of the crime” for purposes of the theory of

acting in concert. Holding that acts committed anytime in the time period between

discrete acts over many days would satisfy the requirement for constructive presence

renders the presence requirement meaningless, particularly when combined with the

State’s argument regarding physical distance.

 Because there is insufficient evidence to show Defendant Bradsher was

constructively present when Ms. Blitzer inputted the fraudulent hours, we hold the

trial court erred in denying Defendant’s motion to dismiss the charge of obtaining

property by false pretenses based on the theory of acting in concert.

 B. Obstruction of Justice

 Defendant next argues the trial court erred in denying his motion to dismiss

the charge of felony obstruction of justice for insufficient evidence on the grounds that

“the State failed to prove Defendant impeded, delayed, and obstructed the

investigation by intentionally making false statements to Agent Whitley on 6

September 2016.” After reviewing the arguments and the record, we agree.

 “At common law it is an offense to do any act which prevents, obstructs,

impedes or hinders public or legal justice. If common law obstruction of justice is

 - 23 -
 STATE V. BRADSHER

 Opinion of the Court

done ‘with deceit and intent to defraud’ it is a felony.” State v. Ditenhafer, 373 N.C.

116, 128, 834 S.E.2d 392, 400 (2019). “The elements of common law felonious

obstruction of justice are: (1) the defendant unlawfully and willfully; (2) obstructed

justice; (3) with deceit and intent to defraud.” State v. Cousin, 233 N.C. App. 523,

537, 757 S.E.2d 332, 342-43 (2014) (cited in Ditenhafer, 373 N.C. at 128, 834 S.E.2d

at 400).

 Defendant argues the State failed to produce any evidence of the obstructive

act alleged in the indictment. Our Supreme Court has long held that “[i]t is error,

generally prejudicial, for the trial judge to permit a jury to convict upon a theory not

supported by the bill of indictment.” State v. Brown, 312 N.C. 237, 248, 321 S.E.2d

856, 863 (1984); see also Ditenhafer, 373 N.C. at 126, 834 S.E.2d at 399 (declining to

consider any of the defendant’s acts not specifically alleged in indictment). Count V

of the indictment alleged that Defendant “commit[ted] the infamous offense of

obstruction of justice by knowingly and intentionally providing false and fabricated

statements to [Agent] Whitley . . . designed to mislead the agent thereby impeding,

delaying and obstructing the investigation, and legal and public justice.” Defendant

argues that the State failed to introduce any evidence showing Mr. Bradsher made

any specific false or fabricated statement and, instead, that Agent Whitley testified

the conversation merely left him with the “overall impression” that Ms. Blitzer was

actually working. The State argues that Mr. Bradsher’s statements to Agent Whitley

 - 24 -
 STATE V. BRADSHER

 Opinion of the Court

that Ms. Blitzer “worked on conflict cases” and that Ms. Blitzer “worked on special

projects” that “he had assigned to her” were false.

 Without specifying a particular time period, the statement that Ms. Blitzer

“worked on conflict cases” was not false. Although the statement omits that Ms.

Blitzer had not worked on a conflict case for five months at the time of the

conversation, that makes the statement at most misleading, not false. Because the

indictment did not allege Mr. Bradsher obstructed justice through an omission, but

through false or fabricated statements, we cannot consider this statement.

 There is, however, conflicting evidence about whether Mr. Bradsher’s

statement to Agent Whitley that Ms. Blitzer “worked on special projects” assigned by

Mr. Bradsher was false. Mr. Bradsher claimed to Agent Whitley that Ms. Blitzer

worked on special projects, but the Blitzers both denied that she did. When asked by

Agent Whitley what special projects Ms. Blitzer worked on, Mr. Bradsher could not

recall details. Taking the evidence in the light most favorable to the State, we assume

Mr. Bradsher’s statement was false.

 Even assuming the statement was false, however, the State must still show

Defendant Bradsher “obstructed justice” through the false statement. The State

argues, relying on State v. Cousin, 233 N.C. App. 523, 757 S.E.2d 332 (2014), that

“when persons knowingly provide false statements to law enforcement, they obstruct

justice.” In Cousin, this Court held that the evidence supported a conviction for

 - 25 -
 STATE V. BRADSHER

 Opinion of the Court

obstruction of justice where the defendant gave eight written statements to law

enforcement in connections with a homicide identifying various alternating persons

as the killer. Id. at 530-31, 757 S.E.2d at 338-39. The detective “testified as to the

significant burden imposed on the investigation,” including following up with each

person and determining they each had an alibi and were not present at the scene of

the crime. Id. at 531, 757 S.E.2d at 339.

 In the present case, Agent Whitley testified his “investigative path” was to

document any work Ms. Blitzer “may have actually done.” Agent Whitley testified he

sought in the interview with Mr. Bradsher “to answer some basic questions: where

[Ms.] Blitzer was located, who her supervisor was, what type of work she did, that

type of thing.” Agent Whitley followed up with several employees Ms. Blitzer had

worked with, a process that took a “couple of weeks.” He acknowledged his follow-up

interviews with Ms. Blitzer’s co-workers were based on Mr. Bradsher’s truthful

response to the question of which people she had worked and interacted with, not any

misstatement he made. Agent Whitley did not testify he specifically asked Mr.

Bradsher if Ms. Blitzer was currently working—he merely testified the interview left

him with that “general impression.” Although Mr. Bradsher’s statement about

special projects may have been misleading, there is no evidence it changed Agent

Whitley’s “investigative path” or extended his investigation beyond what it would

 - 26 -
 STATE V. BRADSHER

 Opinion of the Court

have ordinarily taken. This is short of the burden imposed by the defendant’s false

statements in Cousin and does not show actual obstruction of the investigation.

 The State alternatively argues that “[o]bstruction occurs whenever a person

acts intentionally to hinder justice.” However, this is not a correct statement of the

law. To support a conviction for obstruction of justice, the State must establish

substantial evidence for every element of the crime, including that the act in question

“obstructed justice[.]” Cousin, 233 N.C. App. at 537, 757 S.E.2d at 342-43. We hold

the State did not provide substantial evidence of obstruction to support the conviction

for felony obstruction of justice in this case.

 C. Exclusion of Ms. Peed’s Testimony about Mr. Bradsher’s Statements

 Defendant next argues the trial court erred in excluding Ms. Peed’s testimony

about his statements to her as hearsay. At trial, Mr. Bradsher sought to elicit

testimony from Ms. Peed, his administrative assistant, about an email sent to AOC

based on Mr. Bradsher’s instruction not to certify Ms. Blitzer’s last set of hours, when

Ms. Blitzer did not respond to an inquiry about whether the hours were valid.

Defendant contends the email tended to show he did not know that Ms. Blitzer was

submitting false hours in her BEACON entries.

 The following exchange occurred on cross-examination of Ms. Peed by Mr.

Bradsher:

 - 27 -
 STATE V. BRADSHER

 Opinion of the Court

 [Mr. Bradsher]: Okay. Do you recall, on a form tendered
 by AOC, the District 9A’s position about approving [Ms.
 Blitzer’s] hours and [Ms. Blitzer’s] lack of response?

 [Prosecutor]: Objection.

 THE COURT: Sustained

 ...

 [Mr. Bradsher]: All right. And after you received [an email
 from AOC], what did you reply, that you recall?

 [Peed]: That I had not received – we had not received any
 response from Cindy Blitzer and she was under
 investigation and so we couldn’t –

 [Prosecutor]: Objection[.]

At that point, the trial court excused the jury for voir dire of Ms. Peed. Ms. Peed

responded to the prosecutor’s question about the source of the information in the

email as follows:

 After I talked with Mr. Bradsher – I showed him the email
 that [AOC] sent. Initially, the first time it was sent, [Mr.
 Bradsher] told me to email Ms. Blitzer and see if we could
 get her to certify those hours. Some time later [AOC] sent
 the email back again asking for a response, and . . . I took
 that to [Mr. Bradsher] and said, “Cindy Blitzer never
 responded.” And [Mr. Bradsher] told me to tell [AOC] we
 couldn’t certify the time because [Ms. Blitzer] was under
 investigation. So[,] I answered the email in that way.

Ms. Peed agreed that “[i]t was not [her] decision to send this email of [her] own

volition and [her] decision as to what [she] w[as] going to put in the email; it was

based upon the direction of [Mr. Bradsher][.]” Mr. Bradsher argued Ms. Peed’s

 - 28 -
 STATE V. BRADSHER

 Opinion of the Court

testimony about the content of the email was permissible alternatively because it fell

under the business record exception, and because the State opened the door because

the prosecutor asked Ms. Peed about other statements Mr. Bradsher made to her. He

also said the statement was “not hearsay.” The trial court held that the message to

AOC was hearsay and did not admit it.

 “Hearsay is a statement, other than one made by the declarant while testifying

at the trial or hearing, offered in evidence to prove the truth of the matter asserted.”

N.C. Gen. Stat. § 8C-1, Rule 801(c) (2019). On appeal, Defendant argues the trial

court erred in excluding the testimony because the statement was not hearsay as it

was testimony of a direction or command. He argues Ms. Peed’s testimony about

Defendant’s statements to her are not hearsay because they are directions.

Defendant cites State v. Mitchell, 135 N.C. App. 617, 619, 522 S.E.2d 94, 95 (1999),

in which this Court held directions, commands, and suggestions are not hearsay

because “they are simply offered to prove that the directive was made, not to prove

the truth of any matter asserted therein.”

 We note the State contends Defendant’s argument that Ms. Peed’s testimony

is not hearsay because it is a direction is not preserved. To preserve an argument

regarding the admissibility of evidence, a party “must have presented to the trial

court a timely request, objection, or motion, stating the specific grounds for the ruling

the party desired the court to make if the specific grounds were not apparent from

 - 29 -
 STATE V. BRADSHER

 Opinion of the Court

the context.” N.C. R. App. P. 10(a)(1) (2019). The State argues that Defendant never

argued before the trial court that the statement was not hearsay because it was a

direction. The State acknowledged Defendant’s assertion that the statement was “not

hearsay,” but argues he did not explain this statement further at trial and later

conceded it was hearsay because he wanted to admit the statement to show “the truth

of what happened.”

 Defendant in turn argues that his statement at trial that the challenged

testimony was “not hearsay” was sufficient to preserve the argument that it was a

command for appeal because “Mr. Bradsher alerted the trial court to the theory of

admissibility he raises on appeal and thereby preserved the issue for appellate

review.”

 After reviewing the trial transcript, we hold Defendant’s argument is not

preserved. In arguing for admission of the testimony, Defendant does in passing state

the testimony is “not hearsay,” but he does not explain why and the basis of the

argument is not apparent from the circumstances. In context, Defendant makes the

following arguments:

 Your honor, first of all, I think [the statement] could fall
 within a business record exception.

 Second of all, the State, in issue of fundamental fairness,
 has asked Ms. Peed other statements that I have made. In
 an attempt to clarify and cross-examine what the State has
 raised, I believe, even if deemed hearsay, this would be
 admissible.

 - 30 -
 STATE V. BRADSHER

 Opinion of the Court

 I also contend to the court in [cross-examination of an AOC
 staff member], I specifically addressed this in cross-
 examination. And her response, not in response to any
 question, was, “If such document exists.” So that has been
 put out in front of the jury through a State’s witness in
 cross-examination of [the employee] about first the effect of
 BEACON, the effect of the approval of BEACON and then
 specifically about the nonresponse.

 Ms. Blitzer has testified. She indicated she did not respond
 to that email. And I contend, first of all, that it’s not
 hearsay.

 Yes, this is a unique case because I am being charged for
 conduct in the official capacity as district attorney. And it
 is alleged that this has been obtained property by false
 pretenses. And as part of a regular business
 communication between the A[dministrative ]A[ssistant]
 of District 9A and AOC, the administrative assistant
 transfers this information, I contend that it is admissible,
 Your Honor.

 It is not clear from Defendant’s argument at trial what he means by “it’s not

hearsay.” Defendant begins by arguing for a business record exception and that the

State opened the door. He then says it is not hearsay before again arguing it falls

under the business record exception. Based on the transcript, it seems likely

Defendant was referring exclusively to whether the statement fell under the business

record exception, particularly since he made no argument it was not hearsay as a

command or under another theory. At no point does he argue the statement was

admissible as a direction or a command.

 - 31 -
 STATE V. BRADSHER

 Opinion of the Court

 The transcript also suggests that others did not understand it that way. The

prosecutor only responded by arguing that the business record exception did not

apply, that it did not matter that it occurred during the regular course of business,

and that it was not relevant. Finally, although the trial court made a thorough ruling,

it did not specifically respond to an argument that the statement was not hearsay

because it was a command, instead ruling that it was irrelevant whether it was made

in Defendant Bradsher’s official capacity and that it was not subject to a business

record exception.

 “[Our] Court[s] ha[ve] long held that where a theory argued on appeal was

not raised before the trial court, ‘the law does not permit parties to swap horses

between courts in order to get a better mount . . . .” State v. Sharpe, 344 N.C. 190,

473 S.E.2d 3 (1996) (citation omitted). The purpose of preservation rules “is to require

a party to call the court’s attention to a matter upon which he or she wants a ruling

before he or she can assign error to the matter on appeal.” State v. Canady, 330 N.C.

398, 401, 410 S.E.2d 875, 878 (1991). In Sharpe, our Supreme Court held that where

the defendant had made arguments for admissibility under two hearsay exceptions

before the trial court, the State responded only to those arguments, and the trial court

expressly ruled on admissibility only under those grounds, then the defendant could

not argue a new ground on appeal. Sharpe, 344 N.C. at 195, 473 S.E.2d at 5-6. While

Defendant’s statement that Ms. Peed’s testimony was “not hearsay” is ambiguous, all

 - 32 -
 STATE V. BRADSHER

 Opinion of the Court

parties focused on whether the statement was admissible as a business record.

Defendant’s statement did not adequately call the trial court’s attention to the

argument he now presents on appeal: that the statement was not hearsay because it

was a command. We therefore hold this argument is not preserved for appellate

review.

 D. Jury Instruction

 Finally, Defendant argues the trial court plainly erred by “failing to instruct

the jury on the specific false representations alleged in the indictment.” We note

Defendant has “specifically and distinctly” contended that the error at issue was plain

error, as is required for this Court to review instructional or evidentiary issues not

otherwise preserved on appeal. N.C. R. App. P. 10(a)(4) (2019). Our Supreme Court

has clarified the standard of review for plain error as follows:

 For error to constitute plain error, a defendant must
 demonstrate that a fundamental error occurred at trial. To
 show that an error was fundamental, a defendant must
 establish prejudice—that, after examination of the entire
 record, the error “had a probable impact on the jury’s
 finding that the defendant was guilty.” Moreover, because
 plain error is to be “applied cautiously and only in the
 exceptional case,” the error will often be one that “seriously
 affect[s] the fairness, integrity or public reputation of
 judicial proceedings.”

State v. Lawrence, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (internal citations

omitted). “In deciding whether a defect in the jury instruction constitutes ‘plain

error’, the appellate court must examine the entire record and determine if the

 - 33 -
 STATE V. BRADSHER

 Opinion of the Court

instructional error had a probable impact on the jury’s finding of guilt.” State v.

Odom, 307 N.C. 655, 661, 300 S.E.2d 375, 378-79 (1983) (citation omitted).

 In the present case, Defendant argues the trial court erred in failing to instruct

the jury on what the particular false representations alleged in the indictments were.

The State alleged two counts of obtaining property by false pretenses. On the first

count, the allegation was that Mr. Bradsher and co-conspirators “submitted

fraudulent entries of hours worked for Cindy Blitzer” to AOC. On the other count,

the State had to prove “Cindy Blitzer submitted fraudulent entries of hours worked

for Cindy Blitzer” to AOC.

 In State v. Locklear, 259 N.C. App. 374, 816 S.E.2d 197 (2018), on which

Defendant relies, this Court reasoned and held that “[b]ecause ‘a defendant must be

convicted, if convicted at all, of the particular offense charged in the bill of

indictment,’ and ‘the state must prove . . . that [the] defendant made the

misrepresentation as alleged,’ it only makes sense that the trial court must instruct

the jury on the misrepresentation as alleged in the indictment.” State v. Locklear,

259 N.C. App. 374, 383, 816 S.E.2d 197, 204 (2018) (alterations and internal citations

omitted). However, “[a] jury instruction that is not specific to the misrepresentation

in the indictment is acceptable so long as the court finds ‘no variance between the

indictment, the proof presented at trial, and the instructions to the jury.’” State v.

Ledwell, 171 N.C. App. 314, 320, 614 S.E.2d 562, 566 (2005) (citation omitted).

 - 34 -
 STATE V. BRADSHER

 Opinion of the Court

 In Locklear, the misrepresentation alleged in the indictment was “filing a fire

loss claim under the defendant’s homeowner insurance policy, when in fact the

defendant had intentionally burned her own residence.” Id. at 383-84, 816 S.E.2d at

205. The evidence presented at trial, however, included additional

misrepresentations the defendant made to the insurance company. The jury

convicted the defendant of obtaining property by false pretenses but acquitted the

defendant of setting fire to her home. Based on these conflicting verdicts, this Court

held it was likely the jury would have reached a different result had the instruction

on the specific misrepresentation been given and held the trial court plainly erred in

failing to do so.

 On appeal, Defendant argues that, as in Locklear, the jury’s verdicts along with

the evidence of multiple false representations made at trial, show that had the trial

court given the instruction regarding the misstatements alleged, the jury would likely

have acquitted Defendant of the charges of obtaining property by false pretenses.

Defendant identifies two assertions he argues were “false representations” the State

advanced at trial to support the obtaining property by false pretenses charges that

were not the false representation alleged in the indictment, that Ms. Blitzer

submitted fraudulent hours to AOC: (1) “[Mr.] Stultz approved [Ms. Blitzer’s]

fraudulent hours;” and (2) “Mr. Bradsher continued to employ [Ms. Blitzer] knowing

she was not working or knowing she worked on 17A matters while employed by 9A.”

 - 35 -
 STATE V. BRADSHER

 Opinion of the Court

The State contends it did not in fact produce evidence of multiple false statements at

trial. Rather, the State argues that the statements Defendant claims were evidence

of false statements were in fact statements the State contended were true. Thus,

according to the State, there was no variance between the false statements alleged in

the indictment and the evidence produced at trial, and the jury could not have relied

on those alternative statements to determine Defendant obtained property by false

pretenses.

 First, Defendant argues that one of the alternative statements the State

proffered at trial is that Mr. Stultz approved fraudulent hours to the AOC on behalf

of Ms. Blitzer. Although, as discussed above, this action was insufficient evidence of

Mr. Bradsher’s presence at the scene of Ms. Blitzer’s crime under an acting in concert

theory, it does not follow that the State was advancing an alternative false

representation when it alleged Mr. Bradsher urged Mr. Stultz to approve Ms.

Blitzer’s hours.

 Defendant also argues that the State advanced the following allegation as an

alternative false representation supporting Defendant’s conviction: that Mr.

Bradsher “falsely held out Ms. Blitzer as his employee when she actually worked for

her husband”. In support of this argument, Defendant cites only the following

statement made by the prosecutor in the State’s closing argument: “I would submit

to you that [Mr. Bradsher] does make a representation by her continued employment

 - 36 -
 STATE V. BRADSHER

 Opinion of the Court

and having his employees continue to release her time for a period of time to AOC.”

The prosecutor did not argue this alleged representation was false. To the contrary,

the evidence presented at trial showed that Mr. Bradsher acknowledged that Ms.

Blitzer was his employee and that all the work she performed as an employee was in

the service of Mr. Bradsher’s office. Thus, this lone statement cannot serve as an

alternative “false representation” to satisfy the obtaining property by false pretenses

requirement.

 The State further contends that “[i]f any other uncharged false pretenses were

discussed at trial, they are irrelevant, because Mr. Bradsher does not maintain that

juror confusion about any other false pretenses prejudiced him.” Although Defendant

argues the State improperly seeks to narrow the field of alternative false statements

that could give rise to the jury’s verdicts, Defendant makes no other argument as to

what these statements might be. “It is not the role of the appellate courts, however,

to create an appeal for an appellant.” Viar v. N.C. Dep’t of Transp., 359 N.C. 400,

402, 610 S.E.2d 360, 361 (2005); see N.C. R. App. P. 28(b)(6) (2019) (“Assignments of

error not set out in the appellant’s brief, or in support of which no reason or argument

is stated or authority cited, will be taken as abandoned.”). Therefore, we do not

consider any statements besides those argued by Defendant in his brief on appeal.

We hold the trial court did not err, nor plainly err, in failing to give an instruction

about the misrepresentation alleged in the indictment.

 - 37 -
 STATE V. BRADSHER

 Opinion of the Court

 III. Conclusion

 We hold the trial court erred in denying Defendant’s motion to dismiss the

charge that Defendant personally committed or acted in concert to commit obtaining

property by false pretenses because there is insufficient evidence that Defendant was

constructively present when Ms. Blitzer inputted the fraudulent hours. We further

hold the trial court erred in denying Defendant’s motion to dismiss for insufficient

evidence as to the charge of felony obstruction of justice by making false statements

to Agent Whitley because the State did not provide substantial evidence of

obstruction to support the conviction. Next, we hold Defendant did not preserve his

argument that Ms. Peed’s testimony was not hearsay because it was a command.

Finally, we hold the trial court did not err in its jury instructions. Therefore, we

vacate the trial court’s judgment as to the offenses of obtaining property by false

pretenses and felony obstruction of justice and remand to the trial court for

proceedings consistent with this opinion. The trial court may reinstate Defendant’s

conviction for aiding and abetting obtaining property by false pretenses.

 NO ERROR IN PART, VACATED IN PART AND REMANDED.

 Judges DIETZ and YOUNG concur.

 - 38 -